**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMERCIAL STREET EXPRESS LLC, NICOLE VANDER MUELEN, SHASTA BURZYNSKI, KATHLEEN COULLARD on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SARA LEE CORPORATION, COLGATE-PALMOLIVE COMPANY, HENKEL CHEMIE VERWALTUNGSGESELLSCHAFT MBH, HENKEL CORP., UNILEVER N.V., UNILEVER PLC, UNILEVER UNITED STATES INC. | No. 08 C 1179 <br><br> JUDGE KENDALL <br><br><br> **JURY DEMAND** |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Commercial Street Express LLC, Nicole Vander Muelen, Shasta Burzynski, Kathleen Coullard, by and through their counsel, Miller Law LLC and Ademi & O'Reilly, LLP, on behalf of themselves and all others similarly situated, and bring this action against the above named Defendants for damages and injunctive relief, and demand trial by jury. In support of this Class Action Complaint, Plaintiffs allege:

**JURISDICTION AND VENUE**

1.      This complaint is filed under Section 16 of the Clayton Act (15 U.S.C. §26) to obtain injunctive relief for violations of Section 1 of the Sherman Act (15 U.S.C. §1), to recover damages under state antitrust and consumer protection laws, and to recover the costs of suit,

including reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained as a result of the Defendants' violations of those laws.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26.

3.      This Court also has jurisdiction pursuant to 28 U.S.C. §1332(d)(2), which provides federal district courts with original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which "any member of a class of plaintiffs is a citizen of a state different from any defendant."

4.      This Court has *in personam* jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused injury to persons and entities residing in, located in, or doing business in the Northern District of Illinois and throughout the United States because each conducts substantial business in or arising from this District.

5.      Venue is proper in this judicial district pursuant to 15 U.S.C. §22 and 28 U.S.C. §1391(b), (c), (d) because, during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiffs' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this District.

6.      Venue is proper because Sara Lee  Corporation ("Sara Lee") resides, is found, has agents and transacts business in this district as provided in 28 U.S.C. §1391(b) and (c) and in Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§15 and 22.  Unilever also transacts business in this district through its offices in Chicago, Illinois.

# PARTIES

## A. Plaintiffs

7.     Commercial Street Express LLC is a Wisconsin limited liability company which, throughout the Class Period, purchased oral, personal and home care products, and suffered injury as a result of Defendants' illegal conduct described in this Class Action Complaint.

8.     Nicole Vander Muelen is an individual residing in Wisconsin and who, throughout the Class Period, purchased, in Wisconsin, oral, personal and home care products, and suffered injury as a result of Defendants' illegal conduct described in this Complaint.

9.     Shasta Burzynski is an individual residing in Michigan and who, throughout the Class Period, purchased, in Michigan, oral, personal and home care products, and suffered injury as a result of Defendants' illegal conduct described in this Complaint.

10.     Kathleen Coullard is an individual residing Michigan and who, throughout the Class Period, purchased, in Michigan, oral, personal and home care products, and suffered injury as a result of Defendants' illegal conduct described in this Class Action Complaint.

## B. Defendants

11.     Sara Lee Corporation ("Sara Lee") is a Maryland corporation with its principal place of business located at 3500 Lacey Road, Downers Grove, Illinois 60515. It conducts business both directly and through wholly-owned and dominated subsidiaries worldwide. Sara Lee's Household and Body Care business is described in its Annual Report as follows:

> Household and Body Care sells products in four primary categories: body care, air care, shoe care and insecticides. Body care consists of soaps, shampoos, bath and shower products, deodorants, shaving creams and toothpastes, which are sold primarily in Europe under brands such as *Sanex, Duschdas, Radox, Monsavon* and *Prodent*. Air care provides air fresheners under the *Ambi Pur* brand in Europe and certain Asian countries. Shoe care includes polishes, cleaners and wax under the *Kiwi* and *Meltonian* brands in many countries around the world. Insecticides are

sold primarily in Europe and Asia under brands such as *Vapona, Catch, GoodKnight, Bloom* and *Ridsect*.

12.    Colgate-Palmolive Company ("Colgate") is a Delaware corporation with its principal place of business located at 300 Park Avenue, New York, New York 10022. It conducts business both directly and through wholly-owned and dominated subsidiaries worldwide. Colgate's Oral, Personal and Home Care business is described in its Annual Report as follows:

> The Company manages its business in two product segments: Oral, Personal and Home Care; and Pet Nutrition. Colgate is a global leader in Oral Care with the leading toothpaste brand throughout many parts of the world, including the U.S., according to value share data provided by ACNielsen. Colgate's Oral Care products include toothpaste, toothbrushes, mouth rinses, dental floss and pharmaceutical products for dentists and other oral health professionals. Significant recent product launches include Colgate Max Fresh, Colgate Sensitive Multi-Protection, Colgate Sensitive Plus Whitening and Colgate Time Control toothpastes, Colgate 360° manual toothbrushes, Colgate MicroSonic battery-powered toothbrushes, Colgate Smiles line of manual toothbrushes for kids and Plax Overnight mouth rinse.
>
> Colgate is a leader in many product categories of the Personal Care market. The Personal Care market includes shower gels, shampoos, conditioners, and deodorants and antiperspirants, as well as liquid hand soaps in which Colgate is the market leader in the U.S. Significant recent product launches include Irish Spring MoistureBlast, Palmolive Nutri-Milk, Protex Deo 12 bar soap, Softsoap Brand Pure Cashmere moisturizing liquid hand soap and body wash, Palmolive BodYogurt shower gel, Palmolive Naturals shampoo and conditioner and Lady Speed Stick Double Defense deodorant.
>
> As part of its strategy to focus on its higher-margin oral and personal care businesses, the Company purchased Tom's of Maine, Inc. in the second quarter of 2006, allowing the Company to enter the fast growing health and specialty trade channel where Tom's of Maine toothpaste and deodorant are market leaders.
>
> Colgate manufactures and markets a wide array of products for Home Care, including Palmolive and Ajax dishwashing liquids, Fabuloso and Ajax household cleaners and Murphy's Oil Soap. Colgate is a market leader in fabric conditioners, with leading brands including Suavitel in Latin America and Soupline in Europe. Significant recent product launches in Home Care include Palmolive Oxy Plus Odor Eliminator dish liquid, Ajax Professional Degreaser spray cleaner and Ajax Professional Double Power spray cleaner.

13.     Henkel Chemie Verwaltungsgesellschaft mbH ("Henkel") is a business entity organized under the laws of Germany with its principal place of business located at 67 Henkelstrasse, 40191 Dusseldorf, Germany.  It conducts business both directly and through wholly-owned and dominated subsidiaries worldwide.  Henkel's dishwashing business includes the brands Pril and Somat.  Henkel's laundry business includes the brands Persil, Mir, Perwoll, Purex, Sil, Spee and Vernel.  Henkel's cleaning business includes the brands Bref and Soft Scrub.  Henkel's oral hygiene business includes the brands Antica Erboristeria, Denivit, Licor del Polo, Theramed and Vademecum.  Henkel's shower products, deodorants, soaps and body lotions business brands include BAC, Barnängen, Coast, Dial, Dry Idea, Fa, La Toja, Mont Saint Michel, Neutromed, Right Guard, Soft & Dri and Tone.

14.     Henkel Corp. ("Henkel Corp.") is a Delaware corporation and a United States subsidiary of Henkel with its principal place of business located at 2200 Renaissance Blvd., Suite 200, The Triad, Gulf Mills, PA 19406.

15.     Unilever N.V. ("Unilever NV") is a business entity organized under the laws of The Netherlands with its principal place of business located at Weena 455, 3013 AL, Rotterdam, The Netherlands.  Defendant Unilever PLC ("Unilever PLC") is a business entity organized under the laws of England with its principal place of business located in Unilever House, Blackfriars, London, England.  Together Unilever NV and Unilever PLC operate as a single economic entity Unilever Group ("Unilever").  Unilever conducts business both directly and through wholly-owned and dominated subsidiaries worldwide.  Unilever's Home and Personal Care business is described in its Annual Report as follows:

> Unilever Home and Personal Care has some of the world's most successful brands, such as *Dove*, *Lux*, *Omo* and *Surf*. All its brands are about looking good, feeling good and getting more out of life. With a strong heritage in hygiene and

personal care, combined with deep consumer insights, our brand portfolio adds vitality to life and delivers value to our business.

Home care
We are market leaders in laundry products in developing and emerging markets, and hold number two positions in North America and most of Europe. Our products have been developed to meet the diverse range of consumer needs to clean and care for their clothes. They include tablets for convenience, traditional powders and liquids for washing by hand or machine. Tailored products, including soap bars, are available for lower income consumers.

Our brands include *Comfort*, *Omo, Radiant, Skip*, *Snuggle* and *Surf*, and they are available in over 100 countries.

Our household care products are designed to meet most cleaning and hygiene needs around the home. In this category, our heartland is Europe, where *Cif* and *Domestos* hold strong positions in the key markets in which they operate.

Personal care
We lead the global deodorants and skin cleansing markets, and are in the top three in daily hair care and mass-market skin care. Six global brands – *Axe, Dove, Lux, Pond's, Rexona* and *Sunsilk* – are the core of our business in these categories.

They are complemented by *Suave,* mainly in North America, and 'health brands' such as *Clear, Lifebuoy* and *Vaseline*, together with a selection of regional and local 'jewels'.

In oral care we have strong positions in a number of countries in Europe and in developing and emerging markets, particularly with our *Signal* and *Close Up* toothpaste brands.

Our global prestige fragrance business is based on the *Calvin Klein* range, which includes *cK one, Eternity* and *Obsession*, complemented by ranges developed with other designers.

16.     Unilever United States, Inc. ("Unilever US") is a Delaware Corporation and a United States subsidiary of Unilever with its principal place of business located at 700 Sylvan Avenue, Englewood Cliffs, NJ 07632.

## CLASS ALLEGATIONS

17.    Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on their own behalf and on behalf of the following class (the "Class"):

> All persons or entities who acquired in the United States oral, personal and home care products (as defined below) manufactured and/or distributed by one or more of the Defendants, their agents or entities under their control (the "Class"), at any time between January 1, 2006 and the present (the "Class Period"). Excluded from the Class are the Defendants; the officers, directors or employees of the Defendants; and any subsidiary, affiliate or other entity in which Defendants have a controlling interest. The Class also excludes all federal, state or local governmental entities, all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

18.    For purposes of this Class Action Complaint, "oral, personal and home care" products are defined as:  Oral Care Products include toothpaste, toothbrushes, mouth rinses and dental floss.  Personal Care Products include hand soaps, including liquid hand soaps, shower gels, shampoos, conditioners, and deodorants and anti-perspirants.  Home Care Products include dishwashing liquids, laundry detergents, household cleaners and fabric conditioner.

19.    Plaintiffs believe that the Class members number in the thousands and are geographically diverse so that joinder of all Class members is impracticable. Plaintiffs do not know the exact number of Class members because that information is in the exclusive control of Defendants and third parties. Plaintiffs believe that the identity of the Class can be obtained through reasonable discovery and notification made to the members of the Class so that the requirements of  Fed. R. Civ. P. 23(a)(1) are satisfied.

20.    There are questions of law and fact common to the Class, including but not limited to the following:

(a)    whether Defendants engaged in a contract, combination or conspiracy to fix the prices of oral, personal and home care products;

(b)    whether Defendants violated Section 1 of the Sherman Act (15 USC Section 1);

(c)     the existence, duration, and illegality of the contract, combination or conspiracy alleged herein;

(d)     whether Defendants and each of them was a participant in the contract, combination or conspiracy alleged herein;

(e)     whether the prices charged for oral, personal and home care products during the Class Period were artificially inflated as a result of Defendants' contract, combination or conspiracy alleged herein;

(f)     the amount by which Defendants' illegal, unfair or deceptive trade practices have inflated the price of oral, personal and home care products over the amount that would have for in a competitive market unaffected by Defendants illegal acts;

(g)     the effect upon and the extent of injuries sustained by Plaintiffs and members of the Class and the appropriate type and/or measure of damages;

(h)     whether Defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein; and

(i)     whether Plaintiffs and the members of the Class are entitled to declaratory and/or injunctive relief.

21.     These common questions and others predominate over questions, if any, which affect only individual Class members. Fed. R. Civ. P. 23(a)(2) and 23(b)(3).

22.     Plaintiffs' claims are typical of, and not antagonistic to, the claims of the other Class members. By advancing their claims, Plaintiffs will also advance the claims of all members of the Class, because Defendants participated in activity that caused the Class to suffer similar injuries. Fed. R. Civ. P. 23(a)(3).

23.     Plaintiffs and their counsel will fairly and adequately protect the interests of absent members of the Class. There are no material conflicts between Plaintiffs' claims and those of absent members of the Class that would make class certification inappropriate. Counsel for Plaintiffs are experienced in complex class action litigation, including antitrust litigation, and will vigorously assert Plaintiffs' claims and those of the Class. Fed. R. Civ. P. 23(a)(4).

24.     A class action is superior to other methods for the fair and efficient resolution of this controversy. The class action device presents fewer management difficulties, and provides the benefit of a single adjudication, economy of scale, and comprehensive supervision by a single court. Fed. R. Civ. P. 23(b)(3). The damages suffered by Plaintiffs and each member of the Class are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent class certification, it would not be feasible for Plaintiffs and the Class to redress the wrongs done to them. Even if Plaintiffs and the Class could afford individual litigation, which is not the case, the court system could not. Further, individual litigations present the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

## DEFENDANTS' ILLEGAL CONDUCT

25.     On February 20, 2008, the Federal Cartel Office of Germany issued a press release stating that it had fined Defendants for price fixing.  A CNNMoney.com article provided the following details:

> Units of Henkel KGaA, Sara Lee Corp (NYSE:SLE) and Unilever (NYSE:UL) NV were fined a total of about 37 mln eur by Germany's Federal Cartel Office for price-fixing and illegally passing on information on price talks with retailers.
>
> The Federal Cartel Office said the companies in early 2006 agreed to hike by 5 pct the price of Pril and Palmolive dish detergents, Fa, Duschdas and Palmolive shower gels and Signal, Dentagard and Colgate toothpaste brands.
>
> These products are made by Henkel, Sara Lee, Unilever and Colgate-Palmolive Co. (NYSE:CL)

The companies also exchanged information about ongoing price talks with retailers in an attempt to influence the market behaviour of competitors and remove the uncertainty of competitive conditions, the Cartel Office said.

The Cartel Office said it will soon launch proceedings against the remaining participants in the exchange of information.

The affected parties can now appeal the fines at the Higher Regional Court in Dusseldorf, Germany, it said.

26.    A Cosmeticsdesign-Europe.com article provided the following additional details:

The Federal Cartel Office in Germany fined Sara Lee, Unilever and two units of Henkel after finding the companies guilty of price fixing at the start of 2006.

The multinationals colluded to increase the prices of shower gel, toothpaste and dishwashing liquid by 5 per cent.

To sidestep the attempts by retail chains to prevent the price hikes, they kept each other informed about their actions and the moves made by retailers.

Of the total €37m fine, €19m was imposed for price fixing and the other €18m was added for sharing information about their pricing discussions with retailers.

Henkel businesses Reiningungsmit-tel and Schwarzkopf & Henkel received the largest fine for colluding to increase the prices of shower gel brand Fa and dishwashing product Pril.

**Price fixing admission**

The companies anti-competitive behavior came to light after another member of the cartel Colgate-Palmolive spilled the beans to the German competition authorities.

Following the tip-off the Federal Cartel Office conducted dawn raids in May last year on the accused firms collecting evidence of price fixing from company computers and documents.

Under its leniency policy put in place to encourage companies to reveal illegal practices, the regulators did not impose a fine on Colgate-Palmolive despite its involvement in the cartel.

**Cartels**

Price fixing often characterises markets that are dominated by a small number of large firms eager to profit from their dominant market position.

How widespread anti-competitive behavior is in the cosmetics industry is difficult to establish but it appears likely that other cartels are currently in operation.

In March 2006 the French Conseil de la Concurrence fined the 13 fragrance brands and three retailers €46.2m after finding them guilty of breaching anti-competition agreements.

Leading companies were again involved in price-fixing agreements including Guerlain, L'Oreal and Marionnaud.

The German regulators said they would be extending their enquiry into price-fixing by investigating other companies shortly.

27.    It has been reported that a spokesperson for Henkel has stated that "We made mistakes.  We accept the fine of €21.6 ."

28.    Colgate-Palmolive, as a member of the conspiracy, has cooperated with the investigation and will likely not be fined by the German Federal Cartel Office.

29.    The above conspiracy dramatically increased the profitability of the Defendants which included the United States market.  For example, in its annual report for 2006, Henkel reported record revenues and profits in its Home Care business of more than €4.1 billion and operating profit of €449 million, a 3.7% increase compared to 2005.  Henkel explained the record revenues and profits as follows:

The world market for laundry and home care products underwent further dynamic expansion, with the markets of relevance for us growing by more than 3 percent. ***Market growth was more price-driven than in previous years because—unlike in 2005—it became possible to pass on raw material cost increases by raising products prices.***  As a consequence, the decline of the last few years encountered in our largest market, Western Europe, was reversed to product gratifying growth. ***In North America, too, there was a tangible price-driven upswing in the market dynamics, with a considerable expansion in sales.***  Russia recorded the highest growth rate.

Against this backdrop, the Laundry & Home Care business sector once again occupied leading global positions in the markets of relevance for us.

[***]

*In North America, the successfully implemented price increases and good performance of our air freshener business contributed to strong growth in organic sales.*  [Emphasis added.]

30.     The oral, personal and home care products market is large, with Unilever's 2006 global sales at €18.297 billion, and sales in the United States of more than €3 billion, Henkel's 2006 sales in the United States of more than €1 billion, Sara Lee's global sales for fiscal year ended July 2007 of more than $2 billion, and Colgate's 2006 sales in the United States of $2.211 billion.

31.     The aforesaid combination and conspiracy has had the following effects, among others:

(a)     price competition in the oral, personal and home care industry has been suppressed, restrained and eliminated;

(b)     the prices of oral, personal and home care products have been raised, fixed, maintained and stabilized at artificial and non-competitive levels; and

(c)     consumers of oral, personal and home care products were deprived of free and open competition in the Oral Care Products, Personal Care Products and Home Care Products market.

## INJURY TO PLAINTIFFS AND MEMBERS OF THE CLASS

32.     During the Class Period, Plaintiffs and the other members of the Class paid inflated prices for Oral Care Products, Personal Care Products and Home Care  Products.  By reason of the alleged violations of the antitrust laws, Plaintiffs and the other members of the Class paid higher prices for Oral Care Products, Personal Care Products and Home Care Products than they would have paid in the absence of the illegal contract, combination or conspiracy, and, as a result, have been injured in their business and have suffered damages in an amount presently undetermined.

33.     The specific amounts of damages have not yet been determined because such

determination will require discovery.

## VIOLATIONS ALLEGED

### COUNT I
**(Violation of Section 1 of the Sherman Act-15 U.S.C. §1)**

34.     Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Class Action Complaint.

35.     Beginning at a time presently unknown to Plaintiffs but at least as early as January 1, 2006 and continuing through the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices of oral, personal and home care products in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. §1).

36.     In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

       (a)     to fix, raise, maintain and stabilize the price of oral, personal and home care products;

       (b)     to allocate markets for oral, personal and home care products among themselves; and

       (c)     to submit rigged bids for the award and performance of certain contracts for oral, personal and home care products.

37.     The combination and conspiracy alleged herein has had the following effects, among others:

(a)    price competition in the sale of oral, personal and home care products has been restrained, suppressed, and/or eliminated in the United States;

(b)    prices for oral, personal and home care products manufactured and sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)    those who purchased oral, personal and home care products indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

38.    Plaintiffs and the Class have been injured and will continue to be injured in their business and property by paying more for oral, personal and home care products purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for oral, personal and home care products.

39.    Plaintiffs and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged in this Class Action Complaint.

## COUNT II
### (Violation of State Antitrust and Unfair Competition Laws)

40.    Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Class Action Complaint.

41.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Alabama Revised Stat. § 8-101-1 *et seq.*

42.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§44-1401 *et seq.*

43.    By reason of the foregoing, Defendants have entered into agreements in restraint

of trade in violation of California Bus. & Prof. Code §§16700 *et seq.* and Cal. Bus. Prof. Code §§ 17200 *et seq.*

44.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§28-4503 *et seq.*

45.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa §§553.1 *et seq.*

46.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 *et seq.*

47.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq.*

48.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws. Ann. §§445.772 *et seq.*

49.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§325D.51 *et seq.*

50.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq.*

51.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§59-801 *et seq.*

52.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§598A *et seq.*

53.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 *et seq.*

54.     By reason of the foregoing, Defendants have entered into agreements in restraint

of trade in violation of North Carolina Gen. Stat. §§75-1 *et seq.*

55.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 *et seq.*

56.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the Pennsylvania common law.

57.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1-3.1 *et seq.*

58.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 *et seq.*

59.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §2453 *et seq.*

60.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§47-18-1 *et seq.*

61.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

62.    Class members in each of the states listed above paid *supra*-competitive, artificially inflated prices for products containing oral, personal and home care products.  As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for oral, personal and home care products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## COUNT III

### (Violation of State Consumer Protection Statutes)

63.     Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Class Action Complaint.

64.     The deceptive practices of the Defendants as alleged above included but is not limited to Defendants conspiring to enter into a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize prices of oral, personal, and home care products.  Defendants' deceptive and anti-competitive conduct resulted in higher consumer prices for oral care products, personal care products and home care products because of supra-competitive pricing as a direct and proximate result of Defendants' anti-competitive conduct.

65.     Defendants' acts as described above are in violation of the following state Consumer Protection statutes.

66.     Defendants have violated Alaska Statutes § 45.50.471 *et seq*.

67.     Defendants have violated Arkansas Code § 4-88-101 *et seq*.

68.     Defendants have violated California Business & Professions Code § 17200 *et seq*.

69.     Defendants have violated District of Columbia Code § 28-3901 *et seq*.

70.     Defendants have violated Florida Stat. § 501.201 *et seq*.

71.     Defendants have violated Hawaii Rev. Stat § 480-1 *et seq*.

72.     Defendants have violated Idaho Code § 48-601 *et seq*.

73.     Defendants have violated Kansas Stat § 50-623 *et seq*.

74.     Defendants have violated Illinois Compiled Statutes § 815 ILCS 505 *et seq.* and 815 ILCS 510 *et seq*.

75.    Defendants have violated Maine Rev. Stat. Title 5 § 207 *et seq.*

76.    Defendants have violated Montana Code § 30-14-101 *et seq.*

77.    Defendants have violated Nebraska Rev. Stat. § 59-1601 *et seq.*

78.    Defendants have violated New Mexico Stat. § 57-12-1 *et seq.*

79.    Defendants have violated New York Gen. Bus. Law § 349 *et seq.*

80.    Defendants have violated North Carolina Gen. Stat. § 75-1.1 *et seq.*

81.    Defendants have violated Oregon Rev. Stat § 646.605 *et seq.*

82.    Defendants have violated Rhode Island Gen. Laws § 6-13.1-1 *et seq.*

83.    Defendants have violated South Carolina Code Laws § 39-5-10 *et seq.*

84.    Defendants have violated Utah Code § 13-11-1 *et seq.*

85.    Defendants have violated Vermont Stat. Title 9, § 2453 *et seq.*

86.    Defendants have violated West Virginia Code § 46A-6-101 *et seq.*

87.    Defendants have violated Wyoming Stat. § 40-12-105.

88.    Plaintiffs and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

89.    Defendants' willful and unlawful conduct allow Plaintiffs and the Class to seek attorneys' fees where allowed by law.  Therefore, Plaintiffs and the Class seek attorneys' fees where they are allowed by law.

## COUNT IV
### (Unjust Enrichment and Disgorgement of Profits)

90.    Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Class Action Complaint.

91.    Defendants have been unjustly enriched through overpayments by Plaintiffs and Class members and the resulting profits.

92.     Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and Class members.

93.     Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and the Class may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.     That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

2.     That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

     i.     a restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in COUNT I and injunctive relief be awarded;

     ii.     an unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified in the COUNT II;

     iii.     acts of unjust enrichment as set forth in COUNT III.

3.     That Plaintiffs and the Class recover damages, as provided by federal and state antitrust laws, and that a joint and several judgment in favor of Plaintiffs and the Class be entered against the Defendants, jointly and severally,  in an amount to be paid in accordance with such laws;

4.     That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or

claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of oral, personal and home care products, information concerning bids of competitors;

5.      That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

6.      That Plaintiffs and the Class be awarded pre- and post-judgment interest, and that interest be awarded at the highest legal rate from and after the date of service of this Class Action Complaint;

7.      That Plaintiffs and the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

8.      That Plaintiffs and the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated:  February 29, 2008                    Respectfully submitted,


By:   /s/ Marvin A. Miller
Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone:      (312) 332-3400
Facsimile:      (312) 676-2676

Guri Ademi
Shpetim Ademi
David Syrios
Corey M. Mather
ADEMI & O'REILLY, LLP
3620 E. Layton
Cudahy, WI  53110
Telephone:      (414) 482-8000
Facsimile:      (414) 482-8001

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury for all issues so triable.

Dated: February 29, 2008

Respectfully submitted,
Plaintiffs

By: s/Marvin A. Miller
Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400

Guri Ademi
Shpetim Ademi
David J. Syrios
Corey M. Mather
**ADEMI & O'REILLY, LLP**
3620 E. Layton
Cudahy, WI  53110
(414) 482-8000