## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| COMMERCIAL STREET EXPRESS LLC, NICOLE VANDER MUELEN, SHASTA BURZYNSKI, and KATHLEEN COULLARD, <br><br> Plaintiffs, <br><br> v. <br><br> SARA LEE CORPORATION, COLGATE-PALMOLIVE COMPANY, HENKEL CHEMIE VERWALTUNGSGESELLSCHAFT MBH, HENKEL CORP., UNILEVER N.V., UNILEVER PLC, and UNILEVER UNITED STATES INC., <br><br> Defendants. | Case No. 08 C 1179 <br><br> Honorable Virginia M. Kendall |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## BY UNILEVER UNITED STATES, INC.

Ronald S. Rolfe
Elizabeth L. Grayer
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000
(212) 474-3700 – fax

Sheila Finnegan
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – fax

*Attorneys for Unilever United States, Inc.*

March 24, 2008

## Table of Contents

**Page**

Table of Authorities ........................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ....................................................................................................3

ARGUMENT ........................................................................................................................5

I.      APPLICABLE LEGAL STANDARDS ........................................................................5

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF ANY
FEDERAL OR STATE LAW ....................................................................................5

III.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
THE COMPLAINT ...................................................................................................10

      A.      The Court Lacks Subject Matter Jurisdiction Over Count I,
Because Plaintiffs Do Not Allege Any Conduct in or Affecting
Domestic Commerce ...................................................................................10

      B.      The Court Lacks Subject Matter Jurisdiction Over the Complaint
in its Entirety, Because Plaintiffs Lack Article III Standing. ...............................12

IV.    COUNT I CANNOT SUPPORT A CLAIM FOR DAMAGES BECAUSE
THE COMPLAINT DOES NOT ALLEGE DIRECT PURCHASES BY
PLAINTIFFS ...........................................................................................................12

V.     PLAINTIFFS LACK STANDING TO PURSUE COUNT II TO THE
EXTENT IT RELIES ON STATE LAW OUTSIDE MICHIGAN AND
WISCONSIN AND LACK STANDING TO PURSUE COUNT III IN ITS
ENTIRETY ..............................................................................................................13

CONCLUSION ...................................................................................................................15

Exhibit A ..........................................................................................................................E-1

Table of Authorities

**Page(s)**

**Cases**

*American Copper & Brass, Inc. v. Halcor*, 494 F. Supp. 2d 873
(W.D. Tenn. 2007) ................................................................................................. 7, 8

*Area Transp., Inc. v. Ettinger*, 219 F.3d 671 (7th Cir. 2000) ....................................... 12

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......................................... 2, 5, 6, 9

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005) ......................... 12

*Eurim-Pharm GmbH v. Pfizer Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984) ................................... 11

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ................................. 2, 8, 10

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ................................................. 2, 13

*In re ACR Copper Tubing Litig.*, No. 06-2207-D/P (W.D. Tenn. July 26, 2007) ......................... 8

*In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599
(7th Cir. 1997) ............................................................................................... 13

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ............................ 14

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) ........................................ 6, 7, 8

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011
(N.D. Cal. 2007) ........................................................................................... 13-14

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365
(S.D. Fla. 2001) ............................................................................................. 14

*Kendall v. Visa U.S.A., Inc.*, No. 05-16549, 2008 WL 613924
(9th Cir. Mar. 7, 2008) ....................................................................................... 9

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) ....................................................................................... 9-10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 12

*Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449 (7th Cir. 1998) ............................ 5

*Palay v. United States*, 349 F.3d 418 (7th Cir. 2003) ................................................. 5

*Palda v. Gen. Dynamics Corp.*, 47 F.3d 872 (7th Cir. 1995) ..................................................5-6

*Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786 (7th Cir. 1996) ....................................... 5

*Plotkin v. Ryan*, 239 F.3d 882 (7th Cir. 2001) ............................................................................. 12

*Potter v. Clark*, 497 F.2d 1206 (7th Cir. 1974) ............................................................................. 9

*Sniado v. Bank Austria AG*, 378 F.3d 210 (2d Cir. 2004) ........................................................... 11

*Temple v. Circuit City Stores, Inc.*, No. 06 CV 5303(JG), 06 CV 5304(JG),
    2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007).......................................................................... 14

*Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir. 2002).................................... 11

*U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623 (7th Cir. 2003).................................................. 13

*United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942 (7th Cir. 2003) ............................. 10

*Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 641 F.2d 457 (7th Cir. 1981) ........................ 13

*Wright v. Associated Ins. Cos.*, 29 F.3d 1244 (7th Cir. 1994) ....................................................... 5

## Statutes and Rules

15 U.S.C. § 1 ..................................................................................................................................... 4

15 U.S.C. § 6a ................................................................................................................................. 10

Ala. Code § 8-10-1.......................................................................................................................... 14

Ariz. Rev. Stat. Ann. § 44-1402...................................................................................................... 14

D.C. Code Ann. § 28-4503 .............................................................................................................. 14

Fed. R. Civ. P. 11 ............................................................................................................................. 8

Fed. R. Civ. P. 12(b)(1).................................................................................................................... 1

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 1, 2, 6

Foreign Trade Antitrust Improvements Act of 1982, Pub. L. No. 97-290,
    96 Stat. 1233 ............................................................................................................................ 10

Haw. Rev. Stat. § 480-4(a).............................................................................................................. 14

Idaho Code § 48-602(2) ................................................................................................................... 14

iii

Iowa Code § 553.3(6) ................................................................................................ 14

Kan. Stat. Ann. § 50-112 .......................................................................................... 14

Kan. Stat. Ann. § 50-624(c) ..................................................................................... 14

Me. Rev. Stat. Ann. tit. 10, § 1101 ......................................................................... 14

Me. Rev. Stat. Ann. tit. 5, § 206(3) ......................................................................... 14

Minn. Stat. § 325D.54 .............................................................................................. 14

Mont. Code Ann. § 30-14-102(8) ............................................................................ 14

N.C. Gen. Stat. § 75-1 .............................................................................................. 14

N.D. Cent. Code § 51-08.1-01(2) ............................................................................ 14

N.M. Stat. Ann. § 57-1-1 .......................................................................................... 14

N.M. Stat. Ann. § 57-12-2(C) .................................................................................. 14

N.Y. Gen. Bus. Law § 349(a) ................................................................................... 14

Neb. Rev. Stat. § 59-1601(2) .................................................................................... 14

Neb. Rev. Stat. § 59-801 ........................................................................................... 14

Nev. Rev. Stat. § 598A.060(1) .................................................................................. 14

Or. Rev. Stat. § 646.605(8) ....................................................................................... 14

R.I. Gen. Laws § 6-13.1-1(5) .................................................................................... 14

S.C. Code Ann. § 39-5-10(b) .................................................................................... 14

S.D. Codified Laws § 37-1-3.1 ................................................................................. 14

Tenn. Code Ann. § 47-25-101 .................................................................................. 14

W. Va. Code § 46A-6-102(6) .................................................................................... 14

W. Va. Code § 47-18-3(a) .......................................................................................... 14

Defendant Unilever United States, Inc. ("Unilever US"), a Delaware corporation with its principal place of business in New Jersey, Amended Class Action Complaint ("Complaint" or "Cpl.") ¶ 16, respectfully submits this memorandum in support of its motion pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) to dismiss all claims in the Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Complaint suffers from a fundamental flaw that requires it to be dismissed:  it is based wholly on a German government agency's decision that, in its own words, evaluates alleged anticompetitive activity that "relate[s] exclusively to Germany," allegedly carried out by German companies — not one of which is named as a defendant in the Complaint. Order and Notice of Regulatory Fine, No. B 11 - 17/06-5 (Federal Cartel Office Feb. 19, 2008), submitted herewith in original German and in certified English translation as Exhibit 1 to the Declaration of Ronald S. Rolfe ("Rolfe Decl."), at 20.[2]  The Complaint is devoid of any factual allegation of activity directly targeted at or affecting the United States.  In fact, Unilever Deutschland GmbH ("GmbH"), the German Unilever entity implicated by the German decision, is accused of fixing prices in a line of business that Unilever entities in the United States exited nearly two years before the scheme was allegedly initiated.  *Compare* Rolfe Decl. Ex. 1, at 8 (alleging June 2005 talks on toothpaste prices) *with* Unilever Annual Report & Accounts and Form 20-F 2003, submitted herewith as Rolfe Decl. Ex. 2, at 18 (noting October 2003 sale of North American oral care brands).  Plaintiffs, meanwhile, allege only that they purchased products allegedly subject to the price-fixing conspiracy in Michigan and Wisconsin.  Cpl. ¶¶ 8-

---

[1] Foreign defendants Unilever NV and Unilever PLC, the ultimate Dutch and United Kingdom parents of Unilever US, have not been served and therefore do not join this motion.

[2] Page citations to the Order and Notice of Regulatory Fine refer to the numbers appearing at the tops of the pages of the document and its translation.

10.  They do not so much as assert a theory — much less provide any fact — that would connect the alleged scheme in Germany to their purchases in the United States.

Two recent decisions of the Supreme Court reveal the inadequacy of the Complaint.  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), the Court held that antitrust complaints like this one that are based on nothing more than speculation and that do not include facts supporting a plausible claim — not merely a possible claim — must be dismissed under Rule 12(b)(6).  In *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, the Court made clear that even well-pleaded allegations of an antitrust conspiracy outside the United States must be dismissed for lack of subject matter jurisdiction unless the complaint alleges a "direct, substantial, and reasonably foreseeable effect" on domestic commerce.  542 U.S. 155, 162 (2004) (hereinafter "*Empagran*").  Since those decisions were issued, the district courts have dismissed antitrust complaints that, like the Complaint here, are based on nothing more than overseas investigation.

The Complaint also fails for other, independent reasons.  To the extent it seeks to recover damages under the federal antitrust laws, it must be dismissed under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), because it does not allege that Plaintiffs directly purchased the items at issue from any of the defendants.  Plaintiffs lack standing to bring most of their claims under Counts II and III, alleging violation of various state antitrust and consumer protection laws, because they do not assert any injury in the states whose laws are invoked.

## STATEMENT OF FACTS[3]

On February 19, 2008, Germany's Federal Cartel Office ("FCO") issued a notice fining GmbH and one of its employees, Arne Kirchem, for violations of a German statute and the Treaty Establishing the European Community. *See* Rolfe Decl. Ex. 1, at 2. According to the FCO decision, which is subject to appeal, Kirchem and Wilfried Hadick, an employee of Colgate-Palmolive GmbH, another German company, conferred between June and September 2005 on potential increases in the price of toothpaste. *Id.* at 8, 29. The two men allegedly reached a "common understanding" that their companies would increase the price of certain brands of toothpaste by 5%. *Id.* at 8. Effective January 1, 2006, GmbH increased the manufacturer's sales prices of its Signal toothpaste by 5.6%. *Id.* Effective the same date, Colgate-Palmolive GmbH increased the gross price of its Colgate and Dentagard toothpastes by 5.2%. *Id.*

In October 2003, nearly two years before the start of the alleged talks between Kirchem and Hadick, the United States Unilever companies sold their oral care brands. *See* Rolfe Decl. Ex. 2, at 18. As a result, the operating review for the Americas in Unilever's most recent annual report notes a number of different brands and product types, but does not refer to any oral care product. *See* Unilever Annual Report and Accounts 2006, submitted herewith as Rolfe Decl. Ex. 3, at 16-17. In fact, the portion of Unilever's annual report quoted in the Complaint states only that Unilever engages in the oral care business in "a number of countries in Europe and in developing and emerging markets." Cpl. ¶ 15.

---

[3] Defendants accept the alleged facts as pleaded solely for purposes of this motion.

3

Exactly one week after the FCO's decision, Plaintiffs filed their original complaint in this action.[4] The Complaint is devoid of allegations about the defendants' conduct except for two long block quotations from news articles about the FCO decision. The Complaint provides no description of the alleged scheme. The only impact it alleges relating to the United States is that the profitability of the defendants, some of which do business in the United States, increased. Cpl. ¶ 29.

Plaintiffs are three individuals who say they purchased "oral, personal and home care products" in their home states — Wisconsin in the case of one, Michigan in the case of the other two — and a Wisconsin limited liability company, Commercial Street Express LLC ("CSE"). Cpl. ¶¶ 7-10. CSE is alleged to have purchased "oral, personal and home care products" as well, but the Complaint does not indicate where. Cpl. ¶ 7. Plaintiffs allegedly made their purchases during the proposed class period, which runs from January 1, 2006 to the present. Cpl. ¶¶ 7-10, 17. The Complaint does not indicate from whom Plaintiffs made their purchases, or provide any other information about Plaintiffs. Plaintiffs seek to represent a class of "[a]ll persons or entities who acquired in the United States oral, personal and home care products (as defined below) manufactured and/or distributed by one or more of the Defendants, their agents or entities under their control" during the class period. Cpl. ¶ 17. Oral care products are defined to include toothpaste, among other things. Cpl. ¶ 18.

The Complaint contains four counts. Count I asserts a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Cpl. ¶¶ 34-39. Counts II and III assert violations of approximately 40 state laws in the fields of antitrust and consumer protection, respectively. Cpl.

---

[4] Plaintiffs amended that complaint to remove mysterious references to price fixing in the "chocolate market."

¶¶ 40-89.  Count IV asserts a claim for unjust enrichment.  Cpl. ¶¶ 90-93.  In the body of the

Complaint, Plaintiffs seek only injunctive relief for the Sherman Act claim and damages for the

state law claims.  Cpl. ¶¶ 39, 88, 93.  In the Complaint's Prayer for Relief, Plaintiffs seek

generally "damages, as provided by federal and state antitrust laws," and an injunction

restraining Defendants from continuing the alleged scheme and from communicating to others

engaged in the sale of oral, personal and home care products information concerning bids of

competitors.  Cpl. Prayer for Relief ¶¶ 3-4.

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARDS

As the Supreme Court has recently held, to survive a motion to dismiss, Plaintiffs

must "state a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. at 1974.  "[A]

formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1965.  Plaintiffs'

"[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

The Court may take into consideration documents that are referred to in the Complaint and are

central to Plaintiffs' claims, *see Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449,

456 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)),

and matters of public record, *see Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

### II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF ANY
### FEDERAL OR STATE LAW

The Court should dismiss all counts of the Complaint, because its factual

allegations are not "enough to raise a right to relief above the speculative level."  *Twombly*, 127

S. Ct. at 1965.  Instead, its assertions of unlawful conduct are wholly conclusory and thus fail to

state a claim for relief, even under the more liberal standard before *Twombly*.  *See, e.g.*, *Panaras*

*v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791-92 (7th Cir. 1996) (quoting *Palda v. Gen.*

*Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995) ("[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).")).

Confronting this issue in *In re Elevator Antitrust Litigation*, 502 F.3d 47, 48 (2d Cir. 2007) (per curiam) ("*Elevator*"), the Second Circuit affirmed dismissal of claims based on the same sort of allegations Plaintiffs make here.  In *Elevator*, the plaintiffs asserted, in relevant part, that elevator companies engaged in anticompetitive conduct by conspiring to fix prices for the sale and maintenance of elevators.  *Id.* at 49.  In support of their claims, the plaintiffs cited several European investigations into alleged antitrust violations in Europe by the defendants and their affiliates.  *Id.*  The court affirmed dismissal of the complaint under Rule 12(b)(6), reasoning that "[a]llegations of anticompetitive wrongdoing in Europe — absent any evidence of linkage between such foreign conduct and conduct here — is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'"  *Id.* at 52.  As here, the plaintiffs had offered "no indication that participants monitored prices in other markets, and no allegations of the actual pricing of elevators or maintenance services in the United States or changes therein attributable to defendants' alleged misconduct."  *Id.* (citations omitted).  Even though the complaint conclusorily alleged a conspiracy in the United States, the court held that, without "an adequate allegation of facts linking transactions in Europe to transactions and effects here," the complaint did not meet the plausibility standard of *Twombly*.  *Id.* at 49, 52.

The Complaint here fails for the same reason; it lacks any factual allegation of injury or conspiracy, and fails adequately to describe even the subject of the alleged scheme. Rather, as in *Elevator*, the only facts asserted by Plaintiffs relate to an alleged scheme to fix the price of toothpaste "exclusively" abroad.  *See* Rolfe. Decl. Ex. 1, at 20.  Nowhere does the Complaint come close to explaining how the alleged price-fixing in Germany affected prices in

the United States, or how Plaintiffs' purported injuries are "attributable to defendants' alleged misconduct." *Elevator*, 502 F.3d at 52.[5]

       In almost identical circumstances, the court in *American Copper & Brass, Inc. v. Halcor*, 494 F. Supp. 2d 873, 874, 877 (W.D. Tenn. 2007), held that the plaintiffs' allegations were so insubstantial and lacking in evidentiary basis that they did not even support the exercise of subject matter jurisdiction. The plaintiffs alleged the defendants had engaged in a global conspiracy to fix the price of copper tubing. *Id.* at 874. The plaintiffs based their complaint on a European Commission decision concerning a conspiracy in Europe. *Id.* at 874-75. After describing that decision, the complaint alleged that the market for copper tubing is global, that the conspiracy was global, and that the defendants sold copper tubing in the United States and fixed prices in the United States. *Id.* at 876. The court dismissed the complaint, holding that the plaintiffs' claims were "'wholly insubstantial' in that they are without any evidentiary basis whatsoever." *Id.* at 877, 880. The court reasoned that the plaintiffs had provided no support for their claim that the existence of a European cartel necessarily implied the existence of a U.S. cartel. *Id.* at 880. The court described the plaintiffs' "wholesale borrowing of facts contained in the EC decision and transforming them into allegations of conduct within the U.S." as "novel" and "audacious." *Id.* at 878. Contemplating what would happen if the complaint were allowed to go forward, the court "envision[ed] a cottage industry built around the monitoring of legal proceedings abroad and, through similar legal alchemy, transforming foreign controversies into litigation 'gold' in the U.S. courts." *Id.*

---

[5] Given that many Unilever brands are country- and region-specific, *see* Rolfe Decl. Ex. 3, at 14-19, and that Unilever US does not sell oral care brands at all, *see* Rolfe Decl. Ex. 2, at 18, such an explanation is difficult to conceive.

In *In re ACR Copper Tubing Litigation*, No. 06-2207-D/P, slip op. at 6 (W.D. Tenn. July 26, 2007), attached hereto as Exhibit A, the court dismissed on the same basis another complaint concerning related allegations that was based "entirely on facts from the EC decisions peppered with language from the Sherman and Clayton Acts and conclusory statements about a price-fixing conspiracy in the U.S."

The Complaint here is even less substantial than those dismissed in *Elevator*, *American Copper & Brass* and *ACR Copper Tubing*.  Plaintiffs simply quote news stories describing the FCO decision and assert injury in the United States.  They do not assert a global conspiracy by Defendants, or that the oral care market or any other product market implicated by the FCO decision is global.  Nor could they consistent with Fed. R. Civ. P. 11.  Indeed, Plaintiffs cannot even allege that any Unilever entity sold toothpaste or any oral care product in the United States during the relevant period, because the United States Unilever companies had given up that business nearly two years before the alleged conspiracy began.  *Compare* Rolfe Decl. Ex. 1, at 8 *with* Rolfe Decl. Ex. 2, at 18.  Apart from Plaintiffs' conclusory allegation that Defendants have "entered into a continuing agreement, understanding, and conspiracy in restraint of trade . . . in the United States," Cpl. ¶ 35, Plaintiffs' only attempt to tie the alleged German conspiracy to the United States is to note that the alleged conspiracy "dramatically increased the profitability of the Defendants which included the United States market."  Cpl. ¶ 29.  If that sort of assertion had any relevance, any company, foreign or domestic, that had operations in the United States and was accused of anticompetitive conduct anywhere in the world would be subject to an action in the U.S. courts under the U.S. antitrust laws.  The Supreme Court squarely rejected such worldwide jurisdiction in *Empagran*.  *See* 542 U.S. at 166-67, 169.

8

Moreover, even were the foreign elements lacking, Plaintiffs' allegations of a price-fixing conspiracy here would fail to state a claim under *Twombly*. 127 S. Ct. at 1971 n.10 (an antitrust conspiracy must mention facts such as a "specific time, place, or person involved in the alleged conspiracies"). In *Kendall v. Visa U.S.A., Inc.*, No. 05-16549, 2008 WL 613924 (9th Cir. Mar. 7, 2008), the court affirmed dismissal of a complaint against credit card companies and banks for an alleged fee-setting antitrust conspiracy under Section 1 of the Sherman Act. In affirming dismissal, the court stated that the plaintiffs did "not allege any facts to support their theory that the Banks conspired or agreed with each other . . . to restrain trade." *Id.* at *4. Specifically, the Court stated that "the complaint does not answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Id.* Plaintiffs have not alleged any fact answering these questions either, or any fact supporting their assertion that there was a conspiracy that extended to the United States.

Indeed, the Complaint fails to allege any act at all by or attributable to Unilever US and should be dismissed as to Unilever US on that basis alone. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed . . . ."). In the absence of any alleged link between GmbH's actions in Germany and Unilever US, Plaintiffs' claims against Unilever US do not rise "above the speculative level." *Twombly*, 127 S. Ct. at 1965.

Finally, the Complaint's broad recitation of "oral, personal and home care" products as the alleged "price-fixed products," which includes 14 categories of products, none of which is connected to any particular Defendant, Cpl. ¶ 18, fails to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Leatherman v. Tarrant*

9

*County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks omitted).  Without such notice, Defendants are incapable of responding to the Complaint or preparing a defense.

**III.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COMPLAINT**

**A.  The Court Lacks Subject Matter Jurisdiction Over Count I, Because Plaintiffs Do Not Allege Any Conduct in or Affecting Domestic Commerce.**

The Court lacks subject matter jurisdiction over Count I, because the Complaint does not allege any conduct by Unilever US (or anyone else, for that matter) in or affecting United States domestic commerce.  The Complaint therefore does not satisfy the requirements of the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), Pub. L. No. 97-290 § 402, 96 Stat. 1233, 1246 (codified at 15 U.S.C. § 6a).  Pursuant to the FTAIA, federal courts have subject matter jurisdiction over claims under the Sherman Act challenging activity involving foreign commerce *only* if the activity has "a direct, substantial, and reasonably foreseeable effect" on domestic commerce.  *Empagran*, 542 U.S. at 162 (internal quotation marks omitted); *see also United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 945-46, 952 (7th Cir. 2003) (en banc).

Plaintiffs do not assert or offer any factual allegation that the activity they challenge had any effect on domestic commerce.  In Count I, Plaintiffs conclusorily assert that the conspiracy "restrained, suppressed and/or eliminated in the United States" price competition in the sale of oral, personal and home care products and "fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States" prices for those products.  Cpl. ¶ 37.  The body of the Complaint, however, refers only to the FCO decision, which says nothing at all about the United States.  Instead, the FCO decision states that the

10

activities it describes "are, in each case, related exclusively to Germany."  Rolfe Decl. Ex. 1, at

20.  Neither the FCO decision nor the Complaint suggests how the alleged activities might have

affected U.S. domestic commerce.  The bald assertions in the statement of Count I thus are

insufficient to predicate subject matter jurisdiction under the FTAIA.

   Inadequate assertions such as Plaintiffs' have led courts to dismiss claims under

the FTAIA.  For example, in *Eurim-Pharm GmbH v. Pfizer Inc.*, 593 F. Supp. 1102, 1104

(S.D.N.Y. 1984), the plaintiff alleged that the defendant pharmaceutical manufacturers fixed

prices on an antibiotic in several foreign markets.  The plaintiff alleged that the United States

price of the antibiotic had risen during the relevant time and argued that the defendants' foreign

conduct "had a spillover effect" on U.S. domestic commerce.  *Id.* at 1106-1107.  Saying that the

"plaintiff has made no allegations whatsoever regarding the manufacture, sale or marketing of

Vibramycin in the United States other than its allegation that the United States price has

increased," the court dismissed the claim under the FTAIA, because the "plaintiff has failed to

allege any facts demonstrating a causal connection between defendants' conduct in Europe and

the price increase in the United States."  *Id.* at 1107.  *See also Sniado v. Bank Austria AG*, 378

F.3d 210, 213 (2d Cir. 2004) (affirming dismissal under FTAIA because complaint's allegations

did not support inference of adequate domestic effect); *Turicentro, S.A. v. American Airlines

Inc.*, 303 F.3d 293, 304 (3d Cir. 2002) (affirming dismissal under FTAIA because "complaint

contained no allegations amounting to any 'effect' on United States commerce").

   The Complaint here is even weaker than the complaints in those dismissal cases.

Plaintiffs do not allege that Defendants' alleged conduct raised U.S. prices; they merely assert

that the conduct "increased the profitability of the Defendants which included the United States

market."  Cpl. ¶ 29.  But the FTAIA requires much more — Plaintiffs must allege an actual

anticompetitive effect in the U.S. market that directly followed from the alleged conspiracy in Germany. *See Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1270-71 (D.C. Cir. 2005) (plaintiffs "must satisfy the FTAIA's requirement that the U.S. effects of the conduct [at issue] give rise to their claims"). Plaintiffs fail to provide any factual allegation or theory to explain how the foreign conduct could have affected the United States in *any way*, let alone in a manner that relates to a reduction of competition in the United States. The Court therefore lacks subject matter jurisdiction over Plaintiffs' Count I claim.

**B. The Court Lacks Subject Matter Jurisdiction Over the Complaint in its Entirety, Because Plaintiffs Lack Article III Standing.**

For the reasons just stated, the Court also lacks subject matter jurisdiction over all four counts of the Complaint, because Plaintiffs do not have Article III standing to pursue any of their claims. To demonstrate Article III standing, a plaintiff must show "a causal connection between the injury and the challenged conduct, i.e., 'traceability.'" *Plotkin v. Ryan*, 239 F.3d 882, 884 (7th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiffs lack Article III standing, because they do not assert — conclusorily or otherwise — any causal connection between their alleged injury and the challenged conduct in Germany. The Complaint offers no theory or fact by which alleged price fixing in Germany could have caused injury to Plaintiffs in Wisconsin and Michigan. Any such theory would be "pure conjecture" and too speculative to support standing. *Area Transp., Inc. v. Ettinger*, 219 F.3d 671, 673-74 (7th Cir. 2000).

**IV.   COUNT I CANNOT SUPPORT A CLAIM FOR DAMAGES BECAUSE THE COMPLAINT DOES NOT ALLEGE DIRECT PURCHASES BY PLAINTIFFS**

To the extent the Complaint asserts a claim for damages under Count I of the Complaint (see *supra* at 4-5), it must be dismissed, because the Complaint does not allege

purchases by Plaintiffs directly from the alleged price-fixing conspiracy, as required by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

*Illinois Brick* prohibits federal antitrust claims for damages by indirect purchasers. *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 627 (7th Cir. 2003); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir. 1997). Plaintiffs generally seek damages. Cpl. Prayer for Relief ¶ 3 (praying that Plaintiffs "recover damages, as provided by federal and state antitrust laws"). But the Complaint nowhere asserts that Plaintiffs satisfy the direct-purchaser requirement. The Court should dismiss Plaintiffs' claim for damages under the Sherman Act, because *Illinois Brick* requires a plaintiff to allege purchases directly from the alleged price-fixing conspiracy.

## V.   PLAINTIFFS LACK STANDING TO PURSUE COUNT II TO THE EXTENT IT RELIES ON STATE LAW OUTSIDE MICHIGAN AND WISCONSIN AND LACK STANDING TO PURSUE COUNT III IN ITS ENTIRETY

In addition to the defects discussed *supra* in Parts II and III.B that mandate dismissal of the Complaint in its entirety, there is an additional, independent reason the Court should dismiss Count II (to the extent it relies on the laws of states other than Michigan and Wisconsin) and Count III in its entirety: Plaintiffs lack standing to raise claims based on state law outside Michigan and Wisconsin.

Named plaintiffs in a proposed class action must have standing to bring each claim asserted; "they may not bootstrap that element into their claim by means of class action certification." *Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 641 F.2d 457, 469 (7th Cir. 1981). Plaintiffs assert only that they made purchases in Michigan and Wisconsin — they do not allege purchases or injury in any other state. Cpl. ¶¶ 8-10. They therefore lack standing to assert violation of the law of any other state. *See In re Graphics Processing Units Antitrust Litig.*, 527

F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (granting motion to dismiss claims under antitrust and consumer protection laws of states in which named class action plaintiffs did not allege they were harmed); *Temple v. Circuit City Stores, Inc.*, Nos. 06 CV 5303(JG), 06 CV 5304(JG), 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (same); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-1107 (N.D. Cal. 2007) (same addressing antitrust claims); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371-72 (S.D. Fla. 2001) (same addressing antitrust claims).

Count II asserts violations of the antitrust and unfair competition laws of Michigan, Wisconsin, 18 other states and the District of Columbia. Cpl. ¶¶ 41-61. Count III does not assert a violation of Michigan or Wisconsin law. Instead it asserts violations of the consumer protection laws of 21 other states and the District of Columbia. Cpl. ¶¶ 66-87. Plaintiffs lack standing to assert violation of all laws cited in Count II except for those of Michigan and Wisconsin,[6] and they lack standing to assert violation of all laws cited in Count III.[7]

---

[6] To the extent Plaintiffs assert that their alleged injuries in Michigan or Wisconsin violate the laws of other states, most of the statutes they cite explicitly reject such a claim by stating that they apply only to activity within or affecting their state of enactment. *See* Ala. Code § 8-10-1; Ariz. Rev. Stat. Ann. § 44-1402; D.C. Code § 28-4503; Iowa Code § 553.3(6); Kan. Stat. Ann. § 50-112; Me. Rev. Stat. Ann. tit. 10, § 1101; Minn. Stat. § 325D.54; Neb. Rev. Stat. § 59-801; Nev. Rev. Stat. § 598A.060(1); N.M. Stat. § 57-1-1; N.C. Gen. Stat. § 75-1; N.D. Cent. Code § 51-08.1-01(2); S.D. Codified Laws § 37-1-3.1; Tenn. Code Ann. § 47-25-101; W. Va. Code § 47-18-3(a).

[7] Again, most of the statutes Plaintiffs cite explicitly bar any claim that they are violated by alleged injuries in Michigan or Wisconsin. *See* Haw. Rev. Stat. § 480-4(a); Idaho Code Ann. § 48-602(2); Kan. Stat. Ann. § 50-624(c); Me. Rev. Stat. Ann. tit. 5, § 206(3); Mont. Code Ann. § 30-14-102(8); Neb. Rev. Stat. § 59-1601(2); N.M. Stat. § 57-12-2(C); N.Y. Gen. Bus. Law § 349(a); N.C. Gen. Stat. § 75-1; Or. Rev. Stat. § 646.605(8); R.I. Gen. Laws § 6-13.1-1(5); S.C. Code Ann. § 39-5-10(b); W. Va. Code § 46A-6-102(6).

## CONCLUSION

For the foregoing reasons, the Court should grant the motion of Unilever US and dismiss the Complaint in its entirety.

March 24, 2008

Respectfully submitted,

By:   __/s/ Britt M. Miller_____

Ronald S. Rolfe
Elizabeth L. Grayer
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000
(212) 474-3700 – fax

Sheila Finnegan
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – fax

Attorneys for Unilever United States, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, hereby certify that on March 24, 2008, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY UNILEVER UNITED STATES, INC.,** to be filed and served electronically via the court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court' s CM/ECF System.

      __/s/ Britt M. Miller_____
      Britt M. Miller
      MAYER BROWN LLP
      71 South Wacker Drive
      Chicago, Illinois  60606
      Phone:  (312) 782-0600
      Fax:  (312) 701-7711
      E-mail:  bmiller@mayerbrown.com