**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMERCIAL STREET EXPRESS LLC, NICOLE VANDER MUELEN, SHASTA BURZYNSKI, and KATHLEEN COULLARD,<br><br>        Plaintiffs,<br><br>   v.<br><br>SARA LEE CORPORATION, COLGATE-PALMOLIVE COMPANY, HENKEL CHEMIE VERWALTUNGSGESELLSCHAFT MBH, HENKEL CORP., UNILEVER N.V., UNILEVER PLC, and UNILEVER UNITED STATES INC.,<br><br>        Defendants. | Case No. 08 C 1179<br><br>Honorable Virginia M. Kendall |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
BY UNILEVER UNITED STATES, INC.**

Ronald S. Rolfe
Elizabeth L. Grayer
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000
(212) 474-3700 – fax

Sheila Finnegan
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – fax

*Attorneys for Unilever United States, Inc.*

May 1, 2008

## Table of Contents

**Page**

Table of Authorities ............................................................................................................... ii

I.      PLAINTIFFS' CONCLUSORY ALLEGATIONS FAIL TO SATISFY
*TWOMBLY* ................................................................................................................. 1

     A.      The Court May Consider the Documents Submitted by Unilever US in
Support of Its Motion to Dismiss .............................................................. 1

     B.      The Complaint Is Deficient on Its Face and Should Be Dismissed,
Irrespective of Whether the Court Considers the FCO Decision and
Unilever Annual Reports ........................................................................... 2

     C.      The FCO Decision and Unilever Annual Reports Submitted by Unilever
US Confirm that Dismissal Is Appropriate ............................................... 5

II.      THE COURT LACKS SUBJECT MATTER JURISDICTION OVER COUNT I ............. 9

III.      PLAINTIFFS LACK STANDING BECAUSE THEY FAIL TO ALLEGE
FACTS ESTABLISHING TRACEABILITY ................................................. 10

IV.      COUNTS II AND III ALSO SHOULD BE DISMISSED FOR FAILURE TO
STATE A CLAIM ............................................................................ 13

V.      THE COURT ALSO SHOULD DISMISS PLAINTIFFS' UNJUST
ENRICHMENT CLAIM ...................................................................... 13

CONCLUSION ...................................................................................... 15

i

## Table of Authorities

**Page(s)**

**Cases**

*420 E. Ohio Ltd. P'ship v. Cocose*, 980 F.2d 1122 (7th Cir. 1992)....................................... 5

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663 (7th Cir. 2007) .............................................................................................................................. 8

*American Copper & Brass, Inc. v. Halcor*, 494 F. Supp. 2d 873 (W.D. Tenn. 2007) ..................................................................................................................... 6, 15

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................... 1, 3, 4, 6, 8, 9, 13, 14

*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) ...................................... 14

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) .................................................... 11

*Empagran S.A. v. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005) ............................ 10

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007) ............................................................. 8

*F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ............................................. 9

*Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994)................................... 11

*Hyland v. Homeservices of Am.*, 3:05-CV-612-R, 2007 WL 2407233 (W.D. Ky. Aug. 17, 2007) .......................................................................................................... 6-7

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ..................................................... 14

*In re ACR Copper Tubing Litig.*, No. 06-2207-D/P (W.D. Tenn. July 26, 2007) ...................... 15

*In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ........................................ 12

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007)................................................... 4, 5, 15

*In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739(SWK)(MHD), 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006)......................................... 12

*In re Hypodermic Prods. Antitrust Litig.*, No. 05-CV-1602 (JLL/CCC), 2007 WL 1959224 (D.N.J. Jun. 29, 2007) ........................................................................................ 8

*In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452 (D. Del. 2007) .............................................................................................................................. 10

*In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461 (D. Md. 2005) ................................. 14

**Page(s)**

*In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .................... 7

*In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777 (N.D. Cal. 2007) ............................... 8

*In re Static Access Memory Antitrust Litig.*, M:07-cv-01819, 2008 WL 426522
    (N.D. Cal. Feb. 14, 2008) ........................................................................................ 8

*Jepson v. Ticor Title Ins. Co.*, No. C06-1723-JCC, 2007 WL 2060856 (W.D.
    Wash. May 1, 2007) ............................................................................................... 12

*Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614 (7th Cir. 2007) ................................. 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................... 10

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .......................................................... 11

*Palda v. Gen. Dynamics Corp.*, 47 F.3d 872 (7th Cir. 1995) ..................................... 2, 3

*Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786 (7th Cir. 1996) ....................... 3

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ........................................ 11-12

*Peters v. LG Elecs. USA, Inc.*, No. 07-cv-38(DMC), 2007 WL 4591405 (D.N.J.
    Dec. 28, 2007) ................................................................................................... 13-14

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) ................................... 13

*Plotkin v. Ryan*, 239 F.3d 882 (7th Cir. 2001) ............................................................ 10

*Sharbaugh v. First Am. Title Ins. Co.*, No. 07 C 2628, 2007 WL 3307019 (N.D.
    Ill. Nov. 2, 2007) ..................................................................................................... 2

*Unity House Inc. v. First Commercial Fin. Group*, No. 96 C 1716, 1997 WL
    282725 (N.D. Ill. May 19, 1997) .......................................................................... 2, 5

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993) .......... 2

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................................ 11

**Statutes and Rules**

42 U.S.C. § 1983 ............................................................................................................ 12

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 13

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1

**Page(s)**

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1, 3

Fed. R. Civ. P. 23 ............................................................................................................... 12

Foreign Trade Antitrust Improvements Act of 1982, Pub. L. No. 97-290 § 402,
   96 Stat. 1233, 1246 ....................................................................................................... 9

Defendant Unilever United States, Inc. ("Unilever US") respectfully submits this reply memorandum in further support of its motion pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) to dismiss all claims in the Complaint.[1]

## I.     PLAINTIFFS' CONCLUSORY ALLEGATIONS FAIL TO SATISFY *TWOMBLY*

Plaintiffs' Response to Unilever's Motion to Dismiss ("Opposition" or "Opp.") spends many pages reciting the Complaint's allegations, but offers no explanation for its most glaring and fatal deficiency under *Twombly*:  a total failure to explain how a decision issued by Germany's Federal Cartel Office ("FCO") evaluating alleged anticompetitive activity by a German Unilever company relating "exclusively to Germany" — the sole basis for the alleged conspiracy — could support allegations of anticompetitive conduct by Unilever US in the United States.  *See* Declaration of Ronald S. Rolfe, dated March 21, 2008 (Docket # 39) ("Rolfe Decl.") Ex. 1, at 20.[2]

### A.   The Court May Consider the Documents Submitted by Unilever US in Support of Its Motion to Dismiss

Plaintiffs suggest that the Court should not consider the documents attached to the Rolfe Declaration in deciding this motion to dismiss.  This position makes no sense.  Plaintiffs' Complaint quotes extensively from news articles reporting on the FCO decision; Unilever US has provided the FCO decision itself.  Plaintiffs cite to a Unilever annual report; Unilever US does the same.  Documents referred to in a complaint that are central to the claim — as the FCO

---

[1] At the time Unilever US filed this motion to dismiss, foreign defendants Unilever NV and Unilever PLC, Unilever US's ultimate Dutch and United Kingdom parents, had not been served and thus did not join in the motion.  On April 23, 2008, Unilever PLC was served.  It will be filing its own motion to dismiss.  Unilever NV has not been served.

[2] Page citations to the Order and Notice of Regulatory Fine refer to the numbers appearing at the tops of the pages of the document and its translation.

decision and Unilever annual reports are here — may be considered in a motion to dismiss.  *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  In addition, the Unilever annual reports are public documents filed with the SEC and are properly subject to judicial notice.  *See, e.g., Sharbaugh v. First Am. Title Ins. Co.*, No. 07 C 2628, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (taking judicial notice of 10-K submitted by plaintiff in opposition to defendant's motion for judgment on pleadings).

Plaintiffs' cases are not to the contrary.  In *Palda v. General Dynamics Corp.*, (Opp. 1 n.1), having failed to plead any fact pertaining to a necessary element of his claim, Palda urged in briefs and at oral argument that the court consider proxy statements and other public documents *in lieu of* specific allegations in the complaint, which the court refused to do.  47 F.3d 872, 875 (7th Cir. 1995).  In *Unity House Inc. v. First Commercial Financial Group*, (Opp. 1 n.1), on motion to dismiss the court refused plaintiff's request to take judicial notice of deposition testimony and business documents.  No. 96 C 1716, 1997 WL 282725, at *5 (N.D. Ill. May 19, 1997).

### B. The Complaint Is Deficient on Its Face and Should Be Dismissed, Irrespective of Whether the Court Considers the FCO Decision and Unilever Annual Reports

Even if the Court declines to consider the FCO decision and Unilever annual report excerpts attached to the Rolfe Declaration, the Complaint is still insufficient on its face, necessitating dismissal.  Its vague allegations and quotations from news articles contain no reference to Unilever US or anticompetitive conduct in the United States.  In their Opposition, Plaintiffs do not address the absence of any allegation in the Complaint pertaining specifically to Unilever US, nor do they explain how Plaintiffs' purported injuries in Michigan and Wisconsin can be linked to the FCO investigation in Germany.  Instead, Plaintiffs continue to rely exclusively on vague, conclusory allegations that are not "enough to raise a right to relief above

2

the speculative level." *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also*

*Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791-92 (7th Cir. 1996) (quoting *Palda*,

47 F.3d at 875 ("[A] complaint which consists of conclusory allegations unsupported by factual

assertions fails even the liberal standard of Rule 12(b)(6).")).

Unable to allege specific facts to connect the investigation in Germany with the

United States, Plaintiffs rest their claims on a single sentence in the Complaint that alleges "[t]he

above conspiracy dramatically increased the profitability of the Defendants which included the

United States market" and quotes from Henkel Corporation's annual report to the effect that

Henkel raised its prices to pass on raw material costs.  Cpl. ¶ 29.  Plaintiffs contend that this

paragraph provides a "factual allegation that Defendants benefited from the conspiracy, not only

in Germany, where a part of the conspiracy has been exposed, but also in the United States."

Opp. 6.[3]

Plaintiffs ask too much.  This vague, conclusory allegation and the accompanying

quotation from another defendant's annual report are not sufficient to satisfy *Twombly*.  As a

threshold matter, price increases by a single company cannot, by definition, constitute a factual

basis for alleging an "agreement" necessary for liability under Section 1 of the Sherman Act.

*See Twombly*, 127 S. Ct. at 1965 (complaint must contain "enough factual matter (taken as true)

to suggest that an agreement [to engage in anticompetitive conduct] was made" (citations and

internal quotation marks omitted)).  Moreover, Henkel's annual report states clearly that those

price increases were part of an effort "to pass on raw material cost increases," Cpl. ¶ 29, an

---

[3] Plaintiffs' Opposition alludes to mysterious "news stories" regarding French antitrust investigations.
Opp. 1.  Any such article, as Plaintiffs themselves admit, is irrelevant to the Court's disposition of this
motion.  Indeed, any such French investigation, as described by Plaintiffs, has no link to Germany or the
United States, and thus provides no basis for salvaging Plaintiffs' claims.

3

action that is fully consistent with entirely innocent conduct. Even if, although not alleged, Unilever US had raised its prices as well, that too would be insufficient to state a claim. In the absence of specific factual allegations that "raise a right to relief above a speculative level," that is exactly the kind of competitive behavior that *Twombly* protects. *See Twombly*, 127 S. Ct. at 1964-66 ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.").

Further, despite Plaintiffs' arguments to the contrary, paragraph 29 of the Complaint fails to distinguish Plaintiffs' claims from those dismissed in *In re Elevator Antitrust Litigation* ("*Elevator*"), because, as in *Elevator*, they depend upon European antitrust investigations without "an adequate allegation of facts linking transactions in Europe to transactions and effects here." 502 F.3d 47, 48-49, 52 (2d Cir. 2007) (per curiam). Plaintiffs here claim their allegations are "more specific" than those made in *Elevator*. Opp. 7. But they are not. In *Elevator*, the plaintiffs alleged that the conspiracy was undertaken in Europe as well as in the United States and was effected by price fixing, bid rigging and collusion. *Elevator*, 502 F.3d at 49. Apart from Plaintiffs' "kitchen sink" allegation here that "Defendants and their co-conspirators entered into a continuing agreement . . . to artificially raise, fix, maintain, and/or stabilize prices of oral, personal and home care products in the United States," Cpl. ¶ 35, the Complaint contains not a single specific allegation as to when, where, how, by whom or on what products an agreement was reached to fix prices in the United States. In sum, like the plaintiffs in *Elevator*, Plaintiffs rely on an implicit "if it happened there, it could have happened here"

4

theory to connect foreign conduct to a domestic defendant.  *Elevator*, 502 F.3d at 52.  Such a theory must fail.[4]

### C.  The FCO Decision and Unilever Annual Reports Submitted by Unilever US Confirm that Dismissal Is Appropriate

Bound by their facially deficient Complaint, Plaintiffs attempt some misdirection, arguing that "[n]owhere in the German ruling is Unilever exculpated of any conduct alleged in the Plaintiffs' complaint."  Opp. 1.  Plaintiffs go on to accuse Unilever US of arguing "that since the German prosecutors focused on particular crimes in Germany, Unilever must be innocent of any crime not mentioned in the German ruling."  Opp. 1.  Plaintiffs misstate Unilever US's position.  Unilever US does not contend the FCO found Unilever Deutschland GmbH ("GmbH") "innocent" of anything.  The point here is that the FCO decision dealt with *only* one alleged conspiracy — between GmbH and another German company, Colgate-Palmolive GmbH — to increase the price of toothpaste in Germany.  Rolfe Decl. Ex. 1, at 8.  Plaintiffs fail to explain how this narrow conspiracy "related exclusively to Germany" provides grounds for a federal antitrust (or U.S. state law) claim against Unilever US.

This failure is amplified by the fact that no Unilever entity sold toothpaste — the only product at issue in the FCO decision — or any other oral care product in the United States during the relevant period.  *Compare* Rolfe Decl. Ex. 1, at 8 (alleging June 2005 talks on toothpaste prices) *with* Rolfe Decl. Ex. 2, at 18 (noting October 2003 sale of North American oral care brands).  Plaintiffs do not dispute that this is true and do not dispute that they do not

---

[4] For the first time, Plaintiffs allege in their Opposition that there existed a "global conspiracy."  Opp. 6.  Of course, it is well-settled that briefs in opposition to a motion to dismiss cannot serve to buttress a complaint.  *See, e.g.*, *420 E. Ohio Ltd. P'ship v. Cocose*, 980 F.2d 1122, 1125 (7th Cir. 1992); *Unity House Inc.*, No. 96 C 1716, 1997 WL 282725, at *6 n.3 (collecting cases).  Moreover, a conclusory allegation of "global conspiracy" standing alone provides no talismanic cure for Plaintiffs' deficient Complaint.

allege anywhere in the Complaint that Unilever in fact sold toothpaste in the United States (*see* Cpl. ¶ 15, referring only to toothpaste sales outside the United States).

Attempting to respond to this point and address *American Copper & Brass, Inc. v. Halcor*, 494 F. Supp. 2d 873, 874, 877 (W.D. Tenn. 2007), Plaintiffs contend that they also have alleged that "the conspiracy involved such global consumer products as Unilever's Dove soaps and Pond's creams." Opp. 8. In *American Copper & Brass*, the court dismissed as "wholly insubstantial" plaintiffs' allegations of a global price-fixing conspiracy that were based on a European Commission decision addressing price-fixing in Europe in part because European and American copper tubing are not substitutable, undermining allegations of a "global" conspiracy. 494 F. Supp. 2d at 877, 880. Plaintiffs here argue that *American Copper & Brass* is distinguishable, because Unilever's Dove soaps and Pond's creams are not subject to such "apparently stringent geographic standards." Opp. 8. Nothing in the Complaint suggests why this is so, and without the assertion of facts overcoming the generally understood differences in labeling and consumer preference between countries (and indeed, in this case, continents), the distinction fails.

Whether Plaintiffs are correct on this point is irrelevant, however. The Complaint contains no allegation of a conspiracy involving Unilever's Dove soaps or Pond's creams, and the FCO decision pertaining to GmbH deals only with toothpaste. Rolfe Decl. Ex. 1, at 8. Thus, there is no allegation, and no basis for an allegation, that Dove soap or Pond's cream was part of any "global conspiracy."

In addition, none of the cases Plaintiffs cite as satisfying the *Twombly* standard supports Plaintiffs' claim. On the contrary, those cases serve only to highlight the Complaint's deficiencies. The complaint in *Hyland v. Homeservices of America* — as Plaintiffs note (Opp. 9)

— included numerous specific factual allegations, allowing it to survive on motion to dismiss. 3:05-CV-612-R, 2007 WL 2407233, at *3 (W.D. Ky. Aug. 17, 2007).  Alleging a conspiracy among real estate brokers in the Louisville area to fix commissions, the complaint cited to a U.S. Department of Justice enforcement action pertaining to the alleged conspiracy in Louisville, as well as admissions of price-fixing by a real estate broker in the state.  *Id.*  It included specific factual allegations describing how the conspiracy stemmed from a Kentucky regulation governing commissions that the defendants helped implement, how price information was communicated between parties, and how fees increased while defendants' costs declined.  *Id.*  As such, the court held that plaintiffs "put the [d]efendants on notice of [their] alleged antitrust claims by setting out facts of an alleged conspiracy to price fix between the [d]efendants."  *Id.*  In stark contrast to the ample factual allegations in *Hyland*, Plaintiffs here hang their claims on an FCO decision relating "exclusively" to Germany and an excerpt from another defendant's annual report that reflects price increases in the United States to recover increasing costs.

       *In re OSB Antitrust Litigation*, No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007), similarly involved far more detailed factual allegations, as shown by the block quotation in Plaintiff's Opposition.  Opp. 10 (discussing coordinated mill shutdowns, delayed construction, etc.).  In addition to those specific allegations, the *OSB* complaints described the means by which defendants communicated with their competitors to coordinate the conspiracy and the conspiracy's effects on prices.  *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *3-*4.  Plaintiffs here allege only that a conspiracy "dramatically increased the profitability of the Defendants which included the United States market."  Cpl. ¶ 29.  They make no specific allegation about that conspiracy, except to say that it existed.  Cpl. ¶ 35.

In *In re Static Access Memory Antitrust Litigation* (Opp. 10), plaintiffs, in addition to making general allegations of conspiracy, price fixing and the susceptibility of the relevant market to such a conspiracy, alleged specific communications among defendants supporting an inference of a conspiracy — such as communications among competitors regarding price information — and quoted from those communications in their complaints. M:07-cv-01819, 2008 WL 426522, at *4 (N.D. Cal. Feb. 14, 2008).

Unlike the cases Plaintiffs cite,[5] the Complaint here fails to provide even the most basic details of any alleged conspiracy. Although generic product categories such as oral, personal and home care products are alleged, there is nothing more specific, including, in particular, no specific allegation about any agreement to take any sort of action directed at the U.S. market. That omission is especially damning, considering that the only Unilever product involved in the FCO decision, toothpaste, was not even sold in the United States during the

---

[5] Plaintiffs' Opposition makes passing reference to several other cases that likewise provide them little or no support. In *Erickson v. Pardus* (Opp. 8-9), the Court held that a *pro se* § 1983 plaintiff had sufficiently alleged that he had suffered "substantial harm," noting a "document filed *pro se* is to be liberally construed." 127 S. Ct. 2197, 2200 (2007) (citation and internal quotation marks omitted). The Court in no way purported to change the pleading standard for an antitrust case as set forth in *Twombly*. *See also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (Opp. 9) (briefly discussing pleading requirements in appeal of district court's denial of motion to file fourth amended complaint); *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 623-24 (7th Cir. 2007) (Opp. 9) (considering whether amendment to Fair Credit Reporting Act had impermissibly retroactive effect and, briefly, whether plaintiffs set forth sufficient factual detail to state a claim under that statute); *In re Hypodermic Prods. Antitrust Litig.*, No. 05-CV-1602 (JLL/CCC), 2007 WL 1959224, at *11-*12 (D.N.J. Jun. 29, 2007) (Opp. 9) (denying motion to dismiss where plaintiffs alleged in detail the nature of the conspiracies, the particular markets affected, and the anti-competitive effects). In addition, Plaintiffs say *In re Rubber Chemicals Antitrust Litigation*, 504 F. Supp. 2d 777 (N.D. Cal. 2007), held that "allegations of parallel pricing which included that certain people were present at trade shows and discussed how to fix prices were sufficient to allege a conspiracy." Opp. 10. However, the court in that case did not base its holding on general allegations of "trade shows" or "parallel pricing," but rather found that plaintiffs "alleged, with specificity, numerous affirmative acts of concealment in furtherance of the conspiracy," such as "secret meetings to set prices, agreement not to publicly discuss the nature of the scheme, destruction of documents that might evidence their actions, and pretextual justifications for the inflated prices." *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d at 788.

8

relevant period.  Given Plaintiffs' failure to link the FCO decision and GmbH's actions in

Germany to Unilever US, along with its failure to plead fundamental facts such as a "specific

time, place, or person involved in the alleged conspirac[y]," *Twombly*, 127 S. Ct. at 1971 n.10,

the Complaint should be dismissed.

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER COUNT I

For the Court to have subject matter jurisdiction over Plaintiffs' federal antitrust

claim, Plaintiffs must allege conduct by one or more defendants that has a "direct, substantial,

and reasonably foreseeable effect" on U.S. domestic commerce.  Foreign Trade Antitrust

Improvements Act of 1982 ("FTAIA"), Pub. L. No. 97-290 § 402, 96 Stat. 1233, 1246 (codified

at 15 U.S.C. § 6a); *see also F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162

(2004).  Plaintiffs here make no such allegation, instead offering only mechanical *pro forma*

words.

In their Opposition, Plaintiffs claim to have satisfied the FTAIA's jurisdictional

requirements 1) by alleging that "Defendants" (with no allegation addressing Unilever US

specifically) entered into "a continuing agreement . . . to artificially raise, fix, maintain, and/or

stabilize prices of oral, personal and home care products in the United States," and 2) by defining

the plaintiff class as "all persons or entities who acquired in the United States oral, personal and

home care products (as defined below) manufactured and/or distributed by one or more of the

Defendants."  Opp. 11 (emphasis in original, citing to Cpl. ¶¶ 17, 35).  Plaintiffs are incorrect.

As a threshold matter, holding that such conclusory and formulaic allegations are enough to

satisfy the FTAIA would render the statute toothless.  Moreover, Plaintiffs' Complaint relies

solely upon the FCO decision, which describes activities that "are, in each case, related

exclusively to Germany" and says nothing about the United States.  Rolfe Decl. Ex. 1, at 20.

The FCO decision also relates only to toothpaste, a business Unilever companies in the United

States had sold nearly two years before the alleged conspiracy began.  *Compare* Rolfe Decl. Ex. 1, at 8 *with* Rolfe Decl. Ex. 2, at 18.  The FCO decision could provide a basis for this Court's jurisdiction under the FTAIA only if Plaintiffs alleged an actual anticompetitive effect in the U.S. market that directly followed from an alleged conspiracy in Germany.  *See Empagran S.A. v. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1270-71 (D.C. Cir. 2005).  Plaintiffs have alleged no such link, and neither the FCO decision nor the Complaint articulates how GmbH's activities in Germany could have affected U.S. domestic commerce at all, let alone have a "substantial" effect.[6]

## III.    PLAINTIFFS LACK STANDING BECAUSE THEY FAIL TO ALLEGE FACTS ESTABLISHING TRACEABILITY

As set forth in Unilever US's Memorandum in Support of Motion to Dismiss ("Mem." 12), this Court lacks subject matter jurisdiction over all four counts of the Complaint, because Plaintiffs fail to plead "a causal connection between the injury and the challenged conduct, i.e., 'traceability,'" and therefore lack Article III standing for any of their claims.  *See Plotkin v. Ryan*, 239 F.3d 882, 884 (7th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  While Plaintiffs' Opposition notably does not contest this lack of standing for purposes of Counts I and IV, Plaintiffs attempt to skirt this deficiency with respect to Counts II and III by arguing that the Court should delay addressing the standing issue until deciding class certification.  Opp. 13-15.  Because of Plaintiffs' failure to allege facts establishing the requisite traceability between the contested conduct in Germany and injury both

---

[6] At least one court has applied the FTAIA's jurisdictional requirement to state antitrust law claims.  *See In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457-58 (D. Del. 2007) (dismissing state law antitrust and consumer protection claims premised on foreign conduct without direct, substantial and foreseeable effects on domestic commerce).  As such, Plaintiffs' failure to allege facts satisfying the FTAIA is likewise fatal to their claims brought under state law.

to named Plaintiffs (assertedly residents of Michigan and Wisconsin) *and* future putative class members in states other than Michigan and Wisconsin, the Court should also dismiss Counts II and III for lack of standing under Article III now.

Article III standing is a threshold issue in every case before a federal court, including cases brought under state law. *See Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 437 n.1 (7th Cir. 1994). To satisfy the traceability element of standing, a class action plaintiff must "allege a distinct and palpable injury to himself" that can be attributed to a defendant. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Finding that a prospective lead plaintiff has failed to establish traceability, a court may refuse to reach the issue of class certification. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 961-62 (9th Cir. 2004). In *Easter*, proposed class action plaintiffs sued various investment trusts that purchased loans that allegedly violated Washington state statutes governing lending. The Ninth Circuit held that plaintiffs could not trace their injuries to — and therefore lacked standing to sue — any investment trust that never held a named plaintiff's loan. *Id.* The Circuit likewise affirmed the district court's decision to address the lack of standing before considering class certification, distinguishing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), which it explained involved "the very specific situation of a mandatory global settlement class." *Easter*, 381 F.3d at 962.

*Easter* is instructive here. Because Plaintiffs have failed to allege facts connecting the conduct in Germany described in the FCO decision with injury in *any* of the states implicated by Counts II and III, class certification would be of little help — unnamed class members in other states would lack standing for want of traceability as surely as the named Plaintiffs in Michigan and Wisconsin do. *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) (Opp. 13-15), does not say otherwise and is factually distinguishable. That case did not

11

involve claims arising from multiple state statutes.  Instead, plaintiffs sued 19 Illinois counties under 42 U.S.C. § 1983 for imposing bail fees in excess of the bail amounts set by the courts.  *Id.* at 675-76.  The court remanded the case, finding that although plaintiffs had paid bail fees in only two of the defendant counties, they still could potentially serve as lead plaintiffs if the district court found that Fed. R. Civ. P. 23 was satisfied.  *Id.* at 680 ("given that the bail bond fee is imposed pursuant to a state statute, and that county sheriffs are for this purpose an arm of the state, it is reasonable for the putative plaintiff class to try to hold all counties accountable within one suit" (citation omitted)).  Here, Counts II and III arise under the laws of 33 different states and the District of Columbia, Cpl. ¶¶ 41-61, 66-81, and the challenged conduct stems from no state statute or state action that would create a "judicial link" satisfying Article III.

In addition, although Plaintiffs are correct that some courts have waited to address standing until deciding class certification, in all of the cases they cite there was no dispute that the named plaintiffs had standing to bring at least some claims.  *See In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739(SWK)(MHD), 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006) (Opp. 13) ("Defendants do not challenge the Named Plaintiffs' standing to bring claims against Defendants under the consumer protection laws of the states in which the Named Plaintiffs reside and purchased GTA."); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (Opp. 13) ("[t]here is no question that . . . each of the named plaintiffs has standing to bring at least some claims"); *see also Jepson v. Ticor Title Ins. Co.*, No. C06-1723-JCC, 2007 WL 2060856, at *1 (W.D. Wash. May 1, 2007) (Opp. 14) ("Defendant argues that Plaintiff lacks standing to assert claims on behalf of residents in *other* states" (emphasis added)).  This Court may properly consider standing now, and because Plaintiffs fail to allege the facts necessary to show traceability for themselves and for putative class members,

the Court should dismiss all Plaintiffs' claims, including Counts II and III.  *See also* Mem. at 13-14.

## IV.    COUNTS II AND III ALSO SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The *Twombly* pleading standards apply to Plaintiffs' state law claims, as well as the federal ones.  *See, e.g.*, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).  In addition to the reasons set forth in Part I above, Counts II and III also should be dismissed for failure to state a claim, because Plaintiffs make no allegation that Unilever US's conduct specifically affected any of the states under whose laws Plaintiffs seek to sue.  Indeed, with the exception of Plaintiffs' vague statements pertaining to Michigan and Wisconsin (Cpl. ¶¶ 7-10), the Complaint contains no allegation particular to any state.  Plaintiffs do not dispute that many of the statutes they cite in Counts II and III apply *only* to activity within or affecting the state of their enactment.  *See* Mem. 14 n.6-n.7.  Nevertheless, Plaintiffs rely on conclusory, catch-all paragraphs (Cpl. ¶¶ 62, 64-65) that fail to show the requisite state-specific effects.  The Complaint's allegations are therefore insufficient to state a claim under those statutes.  *See Twombly*, 127 S. Ct. at 1965 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant would satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claims rests." (citation omitted)).

## V.    THE COURT ALSO SHOULD DISMISS PLAINTIFFS' UNJUST ENRICHMENT CLAIM

Although Plaintiffs suggest otherwise (Opp. 15 n.7), Unilever US *did* address Count IV in its Memorandum in Support of Motion to Dismiss when it asked the Court to dismiss that count for failure to state a claim under *Twombly* and for lack of standing.  *See* Mem. 5, 12; *see also Peters v. LG Elecs. USA, Inc.*, No. 07-cv-38(DMC), 2007 WL 4591405, at *5

13

(D.N.J. Dec. 28, 2007) (applying *Twombly* pleading standard in dismissing claim for unjust

enrichment).  In any case, once the Court dismisses Counts I through III for the reasons

discussed above, no legal foundation for a claim of unjust enrichment will remain.  *See, e.g.*,

*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001) (dismissing unjust enrichment

claim brought under Illinois law, because plaintiff's underlying claim under the Illinois

Consumer Fraud and Deceptive Business Practices Act was dismissed, eliminating the "requisite

violation of 'fundamental principles of justice, equity, and good conscience'" (citation omitted)).

Indeed, Plaintiffs' unjust enrichment claim appears to be little more than an attempted — and

impermissible — end-run around *Illinois Brick*,[7] whereby indirect purchaser Plaintiffs seek to

obtain damages for alleged federal antitrust law violations.  *See In re Microsoft Corp. Antitrust

Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) (holding that *Illinois Brick*'s bar on indirect

purchaser recovery prohibited plaintiff's unjust enrichment claim:  to allow that claim "on behalf

of indirect purchasers would be to invite the same problems of multiple liability and duplicative

recovery that the Supreme Court sought to avoid in *Illinois Brick*").  Count IV should therefore

be dismissed.

---

[7] In the Complaint's Prayer for Relief, Plaintiffs purport to seek generally "damages, as provided by federal and state antitrust laws."  Cpl. Prayer for Relief ¶ 3.  In its Memorandum in Support of Motion to Dismiss, Unilever US explained that to the extent Plaintiffs asserted a claim for damages under Count I, the Complaint would have to be dismissed under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Mem. 12-13.  In their Opposition, Plaintiffs concur, and clarify that they seek only injunctive relief under Count I.  Opp. 12-13.

## CONCLUSION

This case is the latest in an unfortunate recent trend in which class actions are filed reflexively in response to news reports about a local situation in Europe. *Elevator*, *American Copper & Brass, Inc.*, and *In re ACR Copper Tubing Litigation*, No. 06-2207-D/P (W.D. Tenn. July 26, 2007) (slip opinion attached as Exhibit A to the Memorandum in Support of Motion to Dismiss) are other recent examples. To our knowledge, no court has allowed a plaintiff to proceed beyond the pleading stage where it is apparent that the allegations of the complaint are based solely on alleged misconduct in Europe. The present case is a particularly egregious example of this new genre. For these reasons and those discussed above and in the Memorandum in Support of Motion to Dismiss, Plaintiffs' complaint should be dismissed.


May 1, 2008                                        Respectfully submitted,

                                                   By:    /s/ Britt M. Miller

Ronald S. Rolfe                                    Sheila Finnegan
Elizabeth L. Grayer                                Britt M. Miller
CRAVATH, SWAINE & MOORE LLP                        MAYER BROWN LLP
Worldwide Plaza                                    71 South Wacker Drive
825 Eighth Avenue                                  Chicago, Illinois 60606
New York, NY 10019-7475                            (312) 782-0600
(212) 474-1000                                     (312) 701-7711 – fax
(212) 474-3700 – fax

          *Attorneys for Unilever United States, Inc.*


15

### CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on May 1, 2008, I caused a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY UNILEVER UNITED STATES, INC.**, to be filed and served electronically via the court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


    __/s/ Britt M. Miller_____
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Phone:  (312) 782-0600
Fax:  (312) 701-7711
E-mail:  bmiller@mayerbrown.com