**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COMMERCIAL STREET EXPRESS LLC, NICOLE VANDER MUELEN, SHASTA BURZYNSKI, and KATHLEEN COULLARD, <br><br> Plaintiffs, <br><br> v. <br><br> SARA LEE CORPORATION, COLGATE-PALMOLIVE COMPANY, HENKEL CHEMIE VERWALTUNGSGESELLSCHAFT MBH, HENKEL CORP., UNILEVER N.V., UNILEVER PLC, and UNILEVER UNITED STATES INC., <br><br> Defendants. | Case No. 1:08-cv-1179 <br><br> Honorable Virginia M. Kendall |

**JOINT MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS COLGATE-PALMOLIVE COMPANY AND HENKEL CORP.**

David I. Gelfand
Steven J. Kaiser
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue
Washington, DC 20006
T:  (202) 974-1500
F:  (202) 974-1999

*Attorneys for Defendant Henkel Corporation*

Mark L. Kovner
Marimichael O. Skubel
Micah N. Hildenbrand
Samantha A. Gingold
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
T:  (202) 879-5000
F:  (202) 879-5200

*Attorneys for Defendant Colgate-Palmolive Company*

John W. Treece
Richard D. Raskin
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
T:  (312) 853-7000
F:  (312) 853-7036

David Callahan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
T:  (312) 616-2800
F:  (312) 616-2863 (fax)

## TABLE OF CONTENTS

I.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF CORPORATE LAW.................3

II.   PLAINTIFFS' FEDERAL LAW CLAIMS FAIL UNDER *TWOMBLY*. .....................4

III.  PLAINTIFFS' STATE LAW CLAIMS FAIL UNDER *TWOMBLY*. ..........................7

IV.   PLAINTIFFS LACK SUBJECT MATTER JURISDICTION UNDER THE FTAIA. ................................................................................................................10

V.    PLAINTIFFS' PENNSYLVANIA AND IDAHO CLAIMS FAIL BECAUSE THEY ARE NOT RECOGNIZED BY THOSE STATES. ..........................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs. v. Durrett,*
  1998 WL 436062 (Ala. 1998) ................................................................. 9

*Amarel v. Connell,*
  202 Cal. App. 3d 137 ........................................................................... 11

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ............................................................... 1, 4, 5, 8

*Bergstrom v. Noah,*
  974 P.2d 520 (Kan. 1999) ....................................................................... 8

*Byre v. City of Chamberlain,*
  362 N.W.2d 69 (S.D. 1985) ..................................................................... 9

*California v. ARC Am. Corp.,*
  490 U.S. 93 (1989) ................................................................................. 8

*Christensen v. County of Boone, IL,*
  483 F. 3d 454 (7th Cir. 2007) ................................................................. 7

*Crosby v. National Foreign Trade Council,*
  530 U.S. 363 (2000) .............................................................................. 11

*CSR Ltd. v. Cigna Corp,*
  405 F. Supp. 2d 526 (D.N.J. 2005) ....................................................... 12

*DeJohn v. The .TV Corp. Int'l,*
  245 F. Supp. 2d 913 (N.D. Ill. 2003) ..................................................... 3

*E.E.O.C. v. Concentra Health Servs., Inc.,*
  496 F.3d 773 (7th Cir. 2007) .................................................................. 4

*Emergency One, Inc. v. Waterous Co., Inc.,*
  23 F. Supp.2d 959 (E.D.Wis.1998) ......................................................... 9

*Ex parte Rice,*
  67 So. 2d 825 (Ala. 1953) ....................................................................... 8

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.,*
  542 U.S. 155 (2004) ......................................................................... 10, 11

*Firemen's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity*
*& Ben. Fund,*
579 N.E.2d. 1003 (Ill. App. 1st Dist. 1991) .................................................................. 10

*Glass v. Kemper Corp.,*
133 F.3d 999 (7th Cir. 1998) ........................................................................................ 9

*Hardy Bros. Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.,*
848 F. Supp. 1276 (S.D. Miss. 1994) ........................................................................... 8

*Heath Consultants, Inc. v. Precision Instruments, Inc.,*
247 Neb. 267 (Neb.1995) .............................................................................................. 9

*Heller v. Norcal Mutual Ins. Co.,*
876 P.2d 999 (Cal. 1994) ............................................................................................ 12

*Howard v. Minnesota Timberwolves Ltd. P'ship,*
636 N.W.2d 551 (Minn. Ct. App. 2001) ...................................................................... 8

*In re Elevator Antitrust Litigation,*
502 F.3d 47 (2d Cir. 2007).................................................................................. 5, 6, 7

*In re Intel Corp. Microprocessor Antitrust Litig.,*
476 F. Supp. 2d. 452 (D. Del. 2007)...................................................................... 10, 11

*Japan Line, Ltd. v. County of Los Angeles*
441 U.S. 434 (1979)..................................................................................................... 11

*L.C. Williams Oil Co., Inc. v. Exxon Corp.,*
625 F. Supp. 477 (M.D. N.C. 1985) ............................................................................ 12

*Lyttle v. Killackey,*
528 F. Supp. 2d 818 (N.D. Ill. 2007) ............................................................................ 4

*Mullapudi v. Mercy Hosp.,*
2007 WL 4548293 at *4 (N.D. Ill. 2007) ..................................................................... 8

*R.E. Spriggs Co. v. Adolph Coors Co.,*
112 Cal. Rptr. 585 (Cal. Ct. App.1974) ....................................................................... 9

*Rosa v. Johnston,*
651 P.2d 1228 (Hawaii App. 1982) ............................................................................ 12

*Rose v. Vulcan Materials Co.,*
194 S.E.2d 521 (N.C. 1973) .......................................................................................... 9

*Rozema v. Marshfield Clinic,*
977 F. Supp. 1362 (W.D. Wis. 1997) ............................................................................ 9

ii

*State ex. rel Wasden v. Daicel Chem. Indus., Ltd.,*
  141 Idaho 102 (2005) ................................................................................................. 13

*State v. Colo. State Christian Coll. of Church of Inner Power, Inc.,*
  346 N.Y.S.2d 482 (N.Y. Sup. Ct. 1973) ................................................................... 12

*State v. O'Neill Investigations, Inc.,*
  609 P.2d 520 (Alaska 1980) ...................................................................................... 12

*State v. Weinschenk,*
  868 A.2d 200 (Me. 2005) ........................................................................................... 12

*Tennessee ex. rel. Leech v. Levi Strauss & Co.,*
  1980-2 Trade Cas. (CCH) ¶ 63,558 (Tenn. Ch. Ct. 1980) ....................................... 9

*The 'In' Porters, S.A. v. Hanes Printables, Inc.,*
  663 F. Supp. 494 (M.D.N.C. 1987) ........................................................................... 12

*Tri-State Rubbish, Inc. v. Waste Management, Inc.,*
  998 F.2d 1073 (1st Cir. 1994) .................................................................................... 8

*U.S. v. Bestfoods,*
  524 U.S. 51 (1998) ...................................................................................................... 3

*United Nat. Records, Inc. v. MCA, Inc.,*
  616 F. Supp. 1429 (N.D. Ill. 1985) ............................................................................ 3

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
  322 F.3d 942, 945-46, 952 (7th Cir. 2003) .............................................................. 10

*Watkins v. Roach Cadillac, Inc.,*
  637 P.2d 458 (Kan. Ct. App. 1981) .......................................................................... 12

*XF Enters v. BASF Corp.,*
  47 Pa. D. & C. 4th 147 (Pa. Comm. Pl. 2000) ......................................................... 13

**Statutes**

15 U.S.C. § 45 (a)(3)(A) (2006) ...................................................................................... 11

15 U.S.C. § 6a(1) ............................................................................................................... 1

1982 U.S.C.C.A.N. at 2487 ............................................................................................. 11

Ala. Revised Stat. § 8-10-1 (2008) ................................................................................... 9

Ala. Revised Stat. §§ 8-10-1 ............................................................................................ 9

Ariz. Rev. Stat. § 44-1401 ............................................................................................... 9

iii

Ariz. Rev. Stat. § 44-1402 ............................................................................................... 9

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... 9

Cal. Bus. & Prof. Code. § 16700 ..................................................................................... 9

D.C. Code Ann. §§ 8-4502 ............................................................................................... 9

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 1, 10

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1

Fla. Stat. § 501.204(2) (2002) ....................................................................................... 12

Iowa Code §§  553.21 ...................................................................................................... 9

Kan. Stat. Ann. § 50-101 ................................................................................................. 9

Me. Rev. Stat. Ann. 10 § 1101 *et seq.* .......................................................................... 9

Mich. Comp. Laws. Ann. § 445.772 *et seq.* ................................................................. 9

Minn. Stat. §  325D ......................................................................................................... 9

Miss. Code Ann. §§ 75-21-1 *et seq.* ............................................................................. 9

Mont. Ann. Code § 30-14-104(1) (2002) ...................................................................... 12

N.C. Gen. Stat. §§ 75-1 *et seq.* ..................................................................................... 9

N.D. Cent. Code. §§ 51-08.1-01 *et seq.* ....................................................................... 9

N.M. Stat. § 57-12-4 (Michie 2000) ............................................................................. 12

N.M. Stat. Ann. § 57-1-15 (Michie 2000) ...................................................................... 9

N.M. Stat. Ann. §§ 57-1-1 *et seq.* ................................................................................ 9

Neb. Rev. Stat. § 59-801 *et seq.* ................................................................................... 9

Neb. Rev. Stat. § 59-829 (2002) ...................................................................................... 8

Nev. Rev. Stat. Ann. § 598A.050 (1999) ........................................................................ 8

Nev. Rev. Stat. Ann. §§ 598A *et seq.* .......................................................................... 9

S.C. Code Laws § 39-5-20(b) ........................................................................................ 12

S.D. Codified Laws Ann. §§ 37-1-3.1 ............................................................................. 9

Tenn. Code Ann. §§ 47-25-101 *et seq.* ....................................................................... 9

Utah Code § 13-11-2(4) (2002) .................................................................................. 12

Vt. Stat. Ann. Tit. 9, § 2453(b) (1993) ....................................................................... 12

W. Va. Code § 46A-6-101(1) (2002) .......................................................................... 12

W. Va. Code § 47-18-16 (2002) .................................................................................. 9

W. Va. Code §§ 47-18-1 ............................................................................................. 9

Wis. Stat. §§ 1330.01 ................................................................................................. 9

Henkel Corp. ("Henkel") and Colgate-Palmolive Company ("Colgate") seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Henkel and Colgate join in the motions to dismiss filed by Unilever US ("Unilever") on March 24, 2008, and by Sara Lee Corporation ("Sara Lee") on May 1, 2008. Henkel and Colgate file this Joint Memorandum to supplement the arguments raised in Unilever's and Sara Lee's memoranda.

Plaintiffs' Complaint should be dismissed in full for several separate and independent reasons. **First**, the only conspiracy alleged in the Complaint involves German affiliates of Henkel and Colgate. These German companies are not named in the Complaint. Under core principles of corporate law, Colgate and Henkel cannot be held liable for the alleged actions of their foreign affiliates. **Second**, the Complaint alleges **no** facts that plausibly tie the alleged German conspiracy to the United States or to any harm to U.S. consumers, and thus the federal and state claims fail the pleading standards of *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). **Third**, the Complaint does not allege facts that suggest the foreign conspiracy had the requisite direct, substantial, and reasonably foreseeable effects on the U.S. market, and thus it fails to satisfy the jurisdictional requirements of the Foreign Trade Antitrust Improvements Act. **Finally**, the state law claims fail for the same reasons and because Pennsylvania and Idaho law do not permit private antitrust damages claims.

## BACKGROUND

The Complaint alleges that the German Federal Cartel Office (the "FCO") found price fixing on a few specific brands of toothpaste, shower gel, and hand dishwashing liquid sold in Germany to German retailers. (Am. Compl. ¶ 25 - 26.) The Complaint then asserts, without any

factual support, that Defendants and others engaged in a worldwide conspiracy to fix prices on an exponentially broader array of oral, personal, and home care products sold in the United States, including "toothbrushes, mouth rinses and dental floss"; "hand soaps, including liquid hand soaps, shampoos, conditioners, and deodorants and anti-perspirants"; and "laundry detergents, household cleaners and fabric conditioner." (Am. Compl. ¶¶ 18; 25 – 31.)

The FCO action involved Colgate-Palmolive GmbH, Henkel Wasch-und Reinigungsmittel GmbH, and Schwarzkopf & Henkel GmbH. (S*ee* Am. Compl. ¶ 25; s*ee also* Unilever's Memorandum in Support of Motion to Dismiss, Rolfe Decl. Ex. 1). There is no allegation that Henkel and Colgate were named as parties in the German action, and the three German companies that were named in those actions are not Defendants in this case.

The Complaint does not name which of the brands listed in the FCO decisions on which the Complaint is based are sold in the United States (as a matter of public record, most, including both of the Henkel brands listed in the FCO decision, are not sold in the United States). The Complaint does not allege there is a world market for oral, home, and personal care products. The Complaint does not allege Henkel or Colgate set prices on U.S. products from Germany, or that the German subsidiaries and affiliates of Colgate and Henkel named in the German action coordinated with Colgate and Henkel in setting prices to U.S. retailers. The Complaint does not allege which U.S. retailers or consumers were harmed by the German conduct. It identifies no meetings, phone calls, letters, e-mails, or other communications involving Colgate or Henkel in furtherance of an alleged conspiracy directed at or affecting U.S. markets. It does not describe how an alleged conspiracy on U.S. products occurred, how it was implemented, or how it substantially affected the United States.

2

The Complaint does not allege whether any of the dozens of other companies that sell the hundreds of oral care, personal care, and home care products available in the United States were involved, or how such a wide-ranging conspiracy could ever be carried out.

The Complaint alleges the German conspiracy increased Defendants' worldwide profits. (Am. Compl. ¶ 29.)  The Complaint does not allege facts that tie this alleged increase in profits to any specific U.S. price increase or to any specific conspiratorial activity affecting the United States. The Complaint alleges Henkel raised North American prices in the "Laundry & Home Care business sector." *Id.*  The Complaint does not allege facts to plausibly suggest this price increase was caused by an alleged illegal conspiracy, as opposed to higher costs or other benign reasons, or even define what products comprise the "Laundry and Home Care business sector."

## ARGUMENT

## I.     PLAINTIFFS' CLAIMS FAIL AS A MATTER OF CORPORATE LAW.

Colgate and Henkel cannot be held liable for the actions of their German affiliates.  *See U.S. v. Bestfoods,* 524 U.S. 51, 61 (1998) (a parent corporation is an autonomous entity and is not liable for the acts of its subsidiaries); *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 925 (N.D. Ill. 2003) (companies cannot be held liable for actions of affiliated companies because each is a legal entity separate and distinct from its shareholders, directors and officers and other corporations with which it may be affiliated).

Because the only facts alleged in the complaint relate to a conspiracy found by the FCO involving German affiliates of Henkel and Colgate, and those German affiliates are not named in the Complaint, the Complaint must be dismissed.  *United Nat. Records, Inc. v. MCA, Inc.,*  616 F. Supp. 1429, 1430 (N.D. Ill. 1985) (dismissing antitrust complaint because corporate parent was not liable for any alleged antitrust violations of its subsidiary).

II.     **PLAINTIFFS' FEDERAL LAW CLAIMS FAIL UNDER *TWOMBLY*.**

Plaintiffs claim against Colgate and Henkel under Section One of the Sherman Act also fails because the Complaint does not allege facts that plausibly suggest a conspiracy in restraint of trade.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007), the Supreme Court established "what a plaintiff must plead in order to state a claim under §1 of the Sherman Act." Under *Twombly*, antitrust claims, like those here, must be dismissed when they are not described "in sufficient detail to give the defendant notice of what the claim is and the grounds upon which its rests" *and* do not make allegations that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly)*; *Lyttle v. Killackey,* 528 F. Supp. 2d 818, 823-24 (N.D. Ill. 2007) (citing *Twombly*).

Conclusory allegations of antitrust violations, like those here, do not state a claim.  "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly,* 127 S. Ct. at 1966.  "[L]abels and conclusions, and a formulaic recitation of the elements" do not suffice. *Id.* at 1965.  Rather, some who, what, when, and where allegations about the purported conspiracy are needed. *Id.* at 1971 n. 10.

A complaint must state "plausible grounds to infer an [illegal] agreement." *Id.* at 1965. "The need at the pleading stage . . . for allegations plausibly suggesting (not merely consistent with) [illegal] agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possesses enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 1959 (citation omitted).  A complaint must include "enough factual matter (taken as true) to suggest that an agreement [to fix U.S. prices] was made." *Id.* at 1965.

4

Here, there is no "factual matter," no "heft," and no "plausible grounds" – none at all – to support the allegation of an illegal conspiracy resulting in higher U.S. prices on oral, personal and home care products. The Complaint's allegations of conspiracy enumerate "basically every type of conspiratorial activity . . . The list is in entirely general terms without any specification of any particular activities by any particular defendant[; it] is nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever." *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50-51 (2d Cir. 2007) (per curiam) (affirming dismissal of antitrust conspiracy complaint based on foreign investigation and foreign findings of collusion). This is ***precisely*** the type of conclusory pleading the Supreme Court intended be dismissed.

Plaintiffs' allegation that Henkel raised prices in the "Laundry & Home Care business sector" in North America – Plaintiffs' only reference to U.S. prices in the Complaint – certainly does not provide a sufficient factual basis to allege a worldwide conspiracy in oral care, personal care, and home care products. The factually neutral allegation of a unilateral price increase by one of the Defendants is "just as much in line with a wide swath of rational and competitive business strategy" and is even less suggestive of an illegal agreement than the allegations of parallel conduct found to be insufficient in *Twombly.* 127 S. Ct. at 1964-66. Allegations of Henkel's price increase in North America – with no setting or circumstances suggesting a meeting of the minds or an agreement with other competitors relating to U.S. products or U.S. markets – "stops short of the line between possibility and plausibility of 'entitle[ment] to relief'." *Id.*

Nor are there prerequisite facts pled to support a claim that a German conspiracy, involving German corporate entities not named in the Complaint, raised prices to U.S.

customers, hatched a global conspiracy, or otherwise harmed U.S. markets.  Conclusory allegations of a global conspiracy or that foreign conduct harmed U.S. markets, without more, fail to state a claim under *Twombly*.  *See, e.g., In re Elevator Antitrust Litigation*, 502 F.3d 47, 49 (2d Cir. 2007) (per curiam) ("*Elevator*").

The *Elevator* case is instructive.  In *Elevator,* the Second Circuit upheld the dismissal under *Twombly* of an action premised on allegations of a conspiracy affecting U.S. markets that was based on reports of a European antitrust investigation.  *Id.*  The *Elevator* plaintiffs asserted that the European conduct rendered the conspiracy claims plausible for two reasons:  1) the European misconduct reflected the existence of a worldwide conspiracy; and 2) even if the misconduct took place only in Europe, the market was a global market.  The *Elevator* court held that both of these allegations were insufficient to support a conspiracy claim.  *Id.* at 52.  First, the court concluded that there was insufficient factual basis to support a worldwide conspiracy, because there was no "evidence of linkage between such foreign conduct and conduct here."  *Id.* Similarly, here, Plaintiffs do not allege facts that **link** the German conduct to any conduct in, or adverse effects on, U.S. markets.  Rather, Plaintiffs allege conduct in Germany and a price increase by one Defendant in the United States without in any way linking the two.  Plaintiffs, in essence, simply speculate, improperly, that "if it happened there, it could have happened here," which is far short of what is required to state a claim under the antitrust laws.  *Id.*

Second, the *Elevator* court also found plaintiffs' allegations of a "global market" in the relevant products insufficient to support conspiracy claims.  Like the Complaint here, the complaint in *Elevator* contained "nothing more than conclusory allegations," contained no "allegations of global marketing of fungible products," and no "indication that participants monitored prices in other markets," and no allegations that "changes [in U.S. prices were]

attributable to defendants alleged misconduct." *Id.* at 52.  The Plaintiffs' Complaint falls short even of the insufficient complaint in *Elevator,* because unlike in *Elevator,* the Complaint here does not allege that foreign prices affect U.S. pricing.  *See id.* at 51.  In upholding dismissal, the Second Circuit held that "[w]ithout an adequate allegation of facts linking transactions in Europe to transactions and effects here, plaintiffs' conclusory allegations do not 'nudge [their] claims across the line from conceivable to plausible.'"  *Id.* at 52.

To state the obvious, allegations that German price fixing increased global ***profits*** similarly cannot provide a basis for claiming harm to U.S. customers.  Increased profits can, of course, come from many legitimate sources, such as reduced costs, favorable exchange rates, or even expanded sales at ***lower*** prices.  Some of these legitimate sources of higher profits are even discussed in the Henkel 10-K quoted in the Complaint. (Am. Compl. ¶ 25.)  Alleging facts that are more likely to stem from legal activity than from illegal activity does not create an inference of illegal activity harming U.S. markets.  Finally, and in any event, no allegations in the Complaint "plausibly" connect higher worldwide profits to any alleged illegal activities harming U.S. customers.  *See Elevator,* 502 F.3d at 51-52.

In sum, Plaintiffs' Complaint does not state a plausible claim under *Twombly*.  Absent are the necessary plausible factual allegations that Henkel, Colgate, or the other Defendants fixed prices on U.S. products, or that the alleged price fixing in Germany on German products raised prices to U.S. customers.  Without such allegations, the Complaint must be dismissed in its entirety for the reasons set forth above and in Unilever's and Sara Lee's memoranda.

## III.    PLAINTIFFS' STATE LAW CLAIMS FAIL UNDER *TWOMBLY.*

Plaintiffs' state law claims fail under *Twombly*, which also applies to the state law claims. *See, e.g., Christensen v. County of Boone, IL,* 483 F. 3d 454, 465-66 (7th Cir. 2007) (federal pleading requirements apply to 12(b)(6) motion to dismiss state law claims).  Plaintiffs fail to

"describe the [state law] claim in sufficient detail to give the defendant notice of what the claim is and the grounds upon which its rests," *and* the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Mullapudi v. Mercy Hosp.*, 2007 WL 4548293 at *4 (N.D. Ill. 2007).

Like Plaintiffs' federal antitrust claims, Plaintiffs' state law antitrust, consumer protection, and unjust enrichment claims are nothing more than "labels and conclusions, and a formulaic recitation of the elements." *Twombly* 127 S. Ct. at 1965.

The facts needed to support the state law claims, which are missing from the Complaint, are largely the same as those needed for the federal antitrust claims. Each of the state laws at issue are interpreted consistently with the federal antitrust laws, or at a minimum, by looking to the federal laws for guidance in interpreting them.[1]  Like the Sherman Act, each of the state laws

---

[1]    *See Ex parte Rice*, 67 So. 2d 825, 829 (Ala. 1953) ("The federal statutes . . . prescribe the terms of unlawful monopolies and restraints of trade as they should be administered in Alabama"); *Brooks Fiber Communications of Tucson, Inc. v. GST Tucson Lightwave, Inc.,* 992 F. Supp. 1124, 1130 (D. Ariz. 1997) (stating Arizona Antitrust Act mirrors federal antitrust law and statute contains a provision that permits Arizona courts to consult federal antitrust law as a guide to interpreting the statute);  *California v. ARC Am. Corp.,* 490 U.S. 93, 100-103 (1989) (stating that Cartwright Act generally is analogous to Section 1 of the Sherman Act and California courts may look to federal case law); District of Columbia Code Ann. § 28-4515 (2001) (stating that state law is similar to Sherman Act and courts may use interpretations given by federal courts as a guide);  Iowa Code § 553.2 (West 1997) (stating that local antitrust law shall be construed to complement and be harmonized with the federal antitrust laws); *Bergstrom v. Noah,* 974 P.2d 520, 530-31 (Kan. 1999) (asserting that federal antitrust law may provide persuasive authority); *Tri-State Rubbish, Inc. v. Waste Management, Inc.,* 998 F.2d 1073, 1081 (1st Cir. 1994) (finding that the Maine antitrust statute parallels the Sherman Act and that where the plaintiff offers no separate argument for liability under state law, dismissal of the state law claim is appropriate where it merely reasserts federal antitrust claims, which were dismissed); Mich. Comp. Laws. Ann. § 445.784(2) (requiring Michigan courts to give deference to interpretations given by the federal courts to comparable antitrust statutes); *Howard v. Minnesota Timberwolves Ltd. P'ship,* 636 N.W.2d 551, 556 (Minn. Ct. App. 2001) ("Minnesota antitrust law should be interpreted consistently with federal court interpretations of federal antitrust law."); *Hardy Bros. Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.,* 848 F. Supp. 1276, 1290-91 (S.D. Miss. 1994) (dismissing state law antitrust claims where federal analogues lacked merit);  Neb. Rev. Stat. Ann. § 59-829 (2002) (stating that state act shall be construed according to the manner in which federal courts construe the federal statutes); Nev. Rev. Stat. Ann. § 598A.050 (1999) (stating that state statute must be construed in harmony with prevailing judicial interpretations of the federal

(Continued…)

pled requires a conspiracy, combination, or agreement.[2]  Each of the state laws pled requires the alleged conspiracy have an effect within the state.[3]

Because the state law claims are based on the same conclusory allegations of a conspiracy harming U.S. markets, lacking any factual support or detail, and the same allegations

---

antitrust statutes); N.M. Stat. Ann. § 57-1-15 (Michie 2000) (stating that state statute must be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes); *Rose v. Vulcan Materials Co.,* 194 S.E.2d 521, 530 (N.C. 1973) (finding that Sherman Act authorities are "instructive in determining the full reach of [state antitrust law]."); *See Byre v. City of Chamberlain,* 362 N.W.2d 69, 74 (S.D. 1985) (finding that, in construing state antitrust claims, great weight should be given to cases interpreting federal statutes); *Tennessee ex. rel. Leech v. Levi Strauss & Co.,* 1980-2 Trade Cas. (CCH) ¶ 63,558 (Tenn. Ch. Ct. 1980) (stating that federal case law under federal antitrust law is the most persuasive authority on the interpretation of state antitrust law); W. Va. Code § 47-18-16 (2002) (stating that state antitrust statute to be construed "liberally and in harmony with" interpretations of comparable federal antitrust statutes); and *Rozema v. Marshfield Clinic,* 977 F. Supp. 1362, 1374 (W.D. Wis. 1997) (stating that Wisconsin's antitrust law contains similar language and provides coverage parallel to that of the federal antitrust law).

[2]  *See* Ala. Revised Stat. §§ 8-10-1 (2008); Ariz. Rev. Stat. § 44-1401 *et seq* (2008); Cal. Bus. & Prof. Code. §§ 16700 *et seq.* and §§ 17200 *et seq.*; D.C. Code Ann. §§ 28-4502 *et seq.*; Iowa Code §§ 553.21 *et seq.*; Kan. Stat. Ann. §§ 50-101 *et seq.*; Me. Rev. Stat. Ann. 10 §§ 1101 *et seq.*; Mich. Comp. Laws. Ann. §§ 445.772 *et. seq.*; Minn. Stat. §§ 325D.51 *et seq.*; Miss. Code Ann. §§ 75-21-1 *et seq.*; Neb. Rev. Stat. Ann. §§ 59-801 *et* seq.; Nev. Rev. Stat. Ann. § 598A *et seq.*; N.M. Stat. Ann. §§ 57-1-1 *et. seq.*; N.C. Gen. Stat. §§ 75-1 *et seq.*; N.D. Cent. Code. §§ 51-08.1-01 *et seq.*; S.D. Codified Laws Ann. §§ 37-1-3.1 *et seq.*; Tenn. Code Ann. §§ 47-25-101 *et seq.*;  W. Va. Code §§ 47-18-1 *et seq.*; and Wis. Stat. §§ 1330.01 *et seq.*

[3]  Many of the state law statutes expressly require the conspiracy have an effect on commerce in the state.  *See, e.g.* Ala. Revised Stat. §§ 8-10-1 (2008); Ariz. Rev. Stat. § 44-1402; D.C. Code Ann. §§ 28-4502.  When not expressly required by the statutes, the commerce clause as well as the proper jurisdictional limits of state antitrust laws require, at a minimum, that the Plaintiffs allege that the alleged anticompetitive conduct had an effect in each of the states for which state law claims are asserted.  *See Glass v. Kemper Corp.,* 133 F.3d 999, 1001 (7th Cir. 1998) ("A state cannot regulate sales that take place wholly outside it."); *see e.g., Emergency One, Inc. v. Waterous Co., Inc.,* 23 F. Supp.2d 959, 970 (E.D.Wis.1998) (finding that there must be anticompetitive effects within Wisconsin for its state antitrust laws to govern); *Abbott Labs. v. Durrett,* 1998 WL 436062 (Ala. 1998); *Heath Consultants, Inc. v. Precision Instruments, Inc.,* 247 Neb. 267, 527 N.W.2d 596, 606-07 (Neb.1995) (finding that Nebraska antitrust law applied because there were effects within the state); and *R.E. Spriggs Co. v. Adolph Coors Co.,* 112 Cal. Rptr. 585, 594 (Cal. Ct. App. 1974) (requiring that plaintiffs allege a "factual nexus" between the conduct and the state).

of a German conspiracy that lack the requisite linkage to alleged harm in the United States, they should be dismissed for the same reasons the federal claims should be dismissed.

Plaintiffs' common law unjust enrichment claims should also be dismissed under *Twombly*. Plaintiffs fail to plead these claims in a manner sufficient to put defendants' on "notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964. Plaintiffs' Count IV does not specify which state's common law is at issue. And Plaintiffs fail to allege that Defendants have wrongfully obtained or retained any benefits from Plaintiffs, which is a key element of any unjust enrichment claim. *See, e.g.,* Modern Law of Contracts § 16:4 (Howard O. Hunter ed., March 2008); *Firemen's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund,* 579 N.E.2d. 1003, (Ill. App. 1st Dist. 1991).

## IV.    PLAINTIFFS LACK SUBJECT MATTER JURISDICTION UNDER THE FTAIA.

The Federal Trade Antitrust Improvements Act ("FTAIA") requires a plaintiff basing a federal antitrust claim on foreign conduct to allege (and prove) that the foreign conduct had "'a direct, substantial, and reasonably foreseeable effect'" on domestic commerce. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) (quoting 15 U.S.C. § 6a(1)); *see also United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 945-46, 952 (7th Cir. 2003) (en banc). Here, Plaintiffs' claims based on alleged German conduct do not make such required allegations and fail to meet this standard. Thus, they should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The support for dismissing the Complaint on this basis is provided in Unilever's Memorandum in Support of its Motion to Dismiss.

The FTAIA also applies to, and precludes, the state law antitrust claims. *See, e.g, In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d. 452, 457-58 (D. Del. 2007) (state law antitrust and consumer protection claims should not be applied beyond the boundaries set by

the FTAIA and the FTCA).  The FTAIA's applicability to state claims is understandable given its purpose.  The FTAIA is intended to "promote certainty in assessing the applicability of American antitrust law to international business transactions and proposed transactions."  1982 U.S.C.C.A.N. 2487, 2494.  The Supreme Court recognized that "[f]oreign commerce is pre-eminently a matter of national concern," and therefore it is important for the federal government to speak with a single, unified voice.  *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 448 (1979).  In *F. Hoffman La Roche Ltd. v. Empagran,* the Supreme Court recognized that permitting claims lacking direct domestic effects to proceed in U.S. courts could upset other nations' enforcement of their antitrust laws.  542 U.S. at 167-69.

Under the Supremacy Clause, state antitrust and consumer protection laws should not be applied in a way that prevents the accomplishment and execution of the purposes and objectives of Congress.  *See Crosby v. National Foreign Trade Council,* 530 U.S. 363, 373 (2000); *Amarel v. Connell,* 202 Cal. App. 3d 137, 149 (finding it necessary to reconcile the jurisdictions limits under the FTAIA with the application of state antitrust and consumer protection laws in order to avoid a conflict between state and federal law).  To allow the states to impose liability for foreign commerce would directly conflict with the purpose of the FTAIA, and the application of state laws over such commerce is constitutionally preempted.  *Crosby,* 530 U.S. at 380.

Finally, Plaintiffs' state claims are also subject to dismissal under the FTAIA because most state laws are interpreted in a manner consistent with federal law, and thus they are dismissible under federal FTAIA standards.[4]  *See, e.g. In re Intel Corp.*, 476 F. Supp. 2d. at 457

---

[4]  The FTAIA amended both the Sherman Act and the FTC Act to apply the "direct, substantial, and foreseeable" test.  *See* 15 U.S.C. § 45 (a)(3)(A) (2006).  Most of the state antitrust and consumer protection laws cited in the Complaint are modeled after and are interpreted consistently with these two federal laws.  *See supra* note 3; *see also State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 529
(Continued…)

(plaintiffs' state law claims "are limited by the reach of the applicable federal counterparts, and therefore, the Court will dismiss [plaintiffs'] state law claims to the extent they are based on [defendant's] alleged foreign conduct."); *CSR Ltd. v. Cigna Corp*, 405 F. Supp. 2d 526, 551-52 (D.N.J. 2005) (dismissing Sherman Act and New Jersey antitrust claims based on foreign conduct where there was no direct, substantial and reasonably foreseeable affect in the United States); *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 498-501 (M.D.N.C. 1987) (dismissing Sherman Act and North Carolina's Unfair Trade Practices Act because the

---

n.26 (Alaska 1980) (finding that Alaska Statutes § 45.50.545 is analogous to Section 5(a) FTC Act and that Alaska courts should give "due consideration and great weight to interpretations of the [FTC] Act"); *Heller v. Norcal Mutual Ins. Co.,* 876 P.2d 999, 1007 (Cal. 1994) (finding that California's UCL is analogous to the FTC Act); Fla. Stat. § 501.204(2) (2002) ("[D]ue consideration and weight shall be given to the interpretations of the [FTC] and the federal courts relating to [the FTC Act]"); *Rosa v. Johnston,* 651 P.2d 1228, 1234 (Hawaii App. 1982) (stating that state law is virtually a duplication of the FTC Act and contains a clear legislative intent that the FTC and federal courts should guide its construction); Idaho Code § 48-604(1) (Michie 1997 & Supp. 2002) ("[D]ue consideration and great weight shall be given to the interpretation of the [FTC] and the federal courts relating to [the FTC Act]"); § 815 Ill. Comp. Stat. 505/2 (West 2008) ("[C]onsideration shall be given to the interpretations of the [FTC] and the federal courts relating to [the FTC Act]"); *Watkins v. Roach Cadillac, Inc.,* 637 P.2d 458, 463 (Kan. Ct. App. 1981) (asserting that the Kansas Consumer Protect Act is patterned after the FTC Act"); *State v. Weinschenk,* 868 A.2d 200, 205 (Me. 2005) (finding that Maine relies on federal interpretation of unfair methods of competition and unfair or deceptive acts or practices as set forth in the FTC Act); Mont. Ann. Code § 30-14-104(1) (2002) ("[D]ue consideration and great weight shall be given to the interpretation of the [FTC] and the federal courts relating to [the FTC Act]"); N.M. Stat. § 57-12-4 (Michie 2000) ("It is the intent of the legislature that in construing Section 3 of the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the [FTC] and the federal courts."); *State v. Colo. State Christian Coll. of Church of Inner Power, Inc.,* 346 N.Y.S.2d 482, 487 (N.Y. Sup. Ct. 1973) ("It is thus clear that the legislative purpose of § 349 of the General Business Law was to follow in the steps of the [FTC] with respect to the interpretation of deceptive acts and practices outlawed [the FTC Act]"); *L.C. Williams Oil Co., Inc. v. Exxon Corp.,* 625 F. Supp. 477, 481 (M.D. N.C. 1985) (stating that North Carolina's consumer protection law is a verbatim reproduction of Section 5 of the FTC Act and that North Carolina courts look to federal authorities "for guidance in construing the meaning of 75-1.1"); S.C. Code Laws § 39-5-20(b) (Law. Co-op 1985 & Supp. 2002) (expressly directs courts to be guided by the interpretation of the FTC Act); Utah Code § 13-11-2(4) (2002) (statute must be construed to "make state regulation of consumer sales practices not inconsistent with the policies of the [FTC Act] relating to consumer protection"); Vt. Stat. Ann. Tit. 9, § 2453(b) (1993) ("It is the intent of the legislature that . . . the courts of this state will be guided by the construction of similar terms contained in [the FTC Act]"); W. Va. Code § 46A-6-101(1) (2002) ("It is the intent of the legislature that . . . the courts be guided by the interpretation given by the federal courts to the various federal statute dealing with the same or similar matters.").

plaintiff failed to show its injury arose out of a direct domestic effect, as required under the FTAIA, and holding the Commerce Clause as well as due process would be implicated if the state statute "were construed to have a greater extraterritorial reach than the Sherman Act").

Because Plaintiffs Complaint lacks the direct and substantial effects on U.S. commerce required by the FTAIA, Plaintiffs state law claims should be dismissed for lack of subject matter jurisdiction.

## V.    PLAINTIFFS' PENNSYLVANIA AND IDAHO CLAIMS FAIL BECAUSE THEY ARE NOT RECOGNIZED BY THOSE STATES.

Finally, Plaintiffs' purported claims under Pennsylvania and Idaho law fail because those states do not recognize such claims.

Plaintiffs' claim in Count II that Defendants violated "Pennsylvania common law" fails because Pennsylvania does not have an antitrust statute and its law does not allow private damages action for antitrust violations.  *See XF Enters v. BASF Corp.,* 47 Pa. D. & C. 4th 147, 150-151 (Pa. Comm. Pl. 2000) ("No court to date has held that a private remedy is available for damages under Pennsylvania's common law on antitrust violations…There have been 13 antitrust bills introduced in the [Pennsylvania] General Assembly since 1987.  Any one of these bills, if made law, would have provided the private right of action which plaintiff now suggests this court should recognize.").

Plaintiffs' Idaho state law claim in Count III similarly fails because price-fixing claims are not actionable under the Idaho Consumer Protection law.  *See State ex. rel Wasden v. Daicel Chem. Indus., Ltd.,* 141 Idaho 102, 108-09 (2005) (dismissing state price fixing claim against manufacturers, holding that price fixing claims were not actionable under the Idaho Consumer Protection Act).

13

## <u>CONCLUSION</u>

For the reasons discussed above and in Unilever's and Sara Lee's Memoranda in Support of its Motion to Dismiss, Henkel and Colgate respectfully request that Plaintiffs' Complaint be dismissed in its entirety.


Dated:  May 1, 2008                                          Respectfully submitted,



                                                             /s/ *John W. Treece (signed with permission)*
David I. Gelfand                                             John W. Treece
Steven J. Kaiser                                             Richard D. Raskin
CLEARY GOTTLIEB STEEN & HAMILTON LLP                         SIDLEY AUSTIN LLP
2000 Pennsylvania Avenue                                     One South Dearborn
Washington, DC 20006                                         Chicago, IL 60603
T:  (202) 974-1500                                           T:  (312) 853-7000
F:  (202) 974-1999                                           F:  (312) 853-7036

*Attorneys for Defendant Henkel Corporation*

Mark L. Kovner                                                 __/s/ *David K. Callahan*_____
Marimichael O. Skubel                                        David K. Callahan, P.C.
Micah N. Hildenbrand                                         KIRKLAND & ELLIS LLP
Samantha A. Gingold                                          200 East Randolph Drive
KIRKLAND & ELLIS LLP                                         Chicago, Illinois 60601
655 Fifteenth Street, NW                                     T:  (312) 616-2800
Washington, DC 20005                                         F:  (312) 616-2863 (fax)
T:  (202) 879-5000
F:  (202) 879-5200

*Attorneys for Defendant Colgate-Palmolive Company*

## <u>CERTIFICATE OF SERVICE</u>

I, David K. Callahan, an attorney, hereby certify that on May 1, 2008, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY COLGATE-PALMOLIVE COMPANY AND HENKEL CORP.,** to be filed and served electronically via the court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

 */s/ David K. Callahan*
David K. Callahan, P.C.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
T:  (312) 616-2800
F:  (312) 616-2863