**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMERCIAL STREET EXPRESS LLC, NICOLE VANDER MUELEN, SHASTA BURZYNSKI, and KATHLEEN COULLARD,<br><br>    Plaintiffs,<br><br>v.<br><br>SARA LEE CORPORATION, COLGATE-PALMOLIVE COMPANY, HENKEL CHEMIE VERWALTUNGSGESELLSCHAFT MBH, HENKEL CORP., UNILEVER N.V., UNILEVER PLC, and UNILEVER UNITED STATES INC.,<br><br>    Defendants. | Case No. 08 C 1179<br><br>Honorable Virginia M. Kendall |

**REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS
BY UNILEVER PLC AND UNILEVER NV**

| | |
|---|---|
| Ronald S. Rolfe<br>Elizabeth L. Grayer<br>CRAVATH, SWAINE & MOORE LLP<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019-7475<br>(212) 474-1000<br>(212) 474-3700 – fax | Sheila Finnegan<br>Britt M. Miller<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, Illinois 60606<br>(312) 782-0600<br>(312) 701-7711 – fax |

*Attorneys for Unilever PLC and Unilever NV*

July 14, 2008

**Table of Contents**

**Page**

Table of Authorities ................................................................................................................... ii

I.   DEFENDANTS' DECLARATIONS ARE NOT CONCLUSORY, ARE TYPICAL OF THOSE USED IN MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND SHOULD BE CONSIDERED BY THIS COURT .............................................................................................................................1

II.  THE COURT LACKS PERSONAL JURISDICTION OVER UNILEVER PLC AND UNILEVER NV ...........................................................................................................5

     A.   The Complaint Alleges No Intentional Violation of the Sherman Act by Unilever PLC and Unilever NV ..............................................................................5

     B.   Unilever PLC and Unilever NV Do Not Conduct Business in the United States ......................................................................................................................7

III. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY ...............12

Conclusion ..................................................................................................................................14

## Table of Authorities

Page(s)

**CASES**

*Am. Copper & Brass, Inc. v. Mueller Europe, Ltd.*, 452 F. Supp. 2d 821
   (W.D. Tenn. 2006) .................................................................................................. 3, 7

*Arnold v. Morton Int'l, Inc.*, No. IP97-1279-C-T/G, 2000 WL 1007176
   (S.D. Ind. July 19, 2000) ............................................................................................. 4

*Arzoomanian v. British Telecomms., PLC*, Civil Action No. 03-374 (JLL)
   (D.N.J. Aug. 17, 2004) ..................................................................................... 2, 8, 12-13

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934 (7th Cir. 2000) ................................................................................. 11-12

*Chrysler Corp. v. Gen. Motors Corp.*, 589 F. Supp. 1182 (D.D.C. 1984) ..................... 11

*Dick v. Carpenter*, No. 02 C 3038, 2003 WL 1563732 (N.D. Ill. Mar. 17, 2003) ......... 13

*EsNtion Records, Inc. v. JonesTM, Inc.*, No. 3:07-CV-2027-L, 2008 WL 2415977
   (N.D. Tex. June 16, 2008) ..................................................................................... 2-3, 12

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993) ............................................. 5

*Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir. 1975) ............. 6

*In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 403 (S.D.N.Y. 2002) ..... 8, 9, 13

*In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15 (D.D.C. 2003) ............................... 11

*Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp.
   2d 898, 910 (N.D. Ill. 2003) ........................................................................................ 6

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................ 7

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544 (S.D.N.Y. 2001) .......... 9

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998) ............................................. 12

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002) ................ 4

*Purdue Research Found. v. Sanofi-Synthelabo., S.A.*, 338 F.3d 773 (7th Cir. 2003) ..... 3, 4, 12

*Reers v. Deutsche Banh AG*, 320 F. Supp. 2d 140 (S.D.N.Y. 2004) ............................. 9

*Whitney Info. Network, Inc. v. Xcentric Venture, LLC*, 199 Fed. Appx. 738
   (11th Cir. 2006) ........................................................................................................... 4

**STATUTES & RULES**

Fed. R. Civ. P. 12(b)(1)..........................................................................................................1

Fed. R. Civ. P. 12(b)(2)..........................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1

Fed. R. Civ. P. 56(e) ..............................................................................................................4

Fed. R. Evid. 801(c)...............................................................................................................2

Defendants Unilever PLC ("PLC") and Unilever NV ("NV") (collectively, the "Foreign Defendants") respectfully submit this joint memorandum in further support of their motions pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2) and (b)(6) to dismiss all claims in the Complaint ("Complaint" or "Cpl.").

Plaintiffs begin their Opposition to the Foreign Defendants' Motions to Dismiss ("Opposition" or "Opp.") with a glaring misstatement: "Plaintiffs have not alleged that they should recover because of a conspiracy to fix prices in Germany, but rather they should recover because of a conspiracy to fix the prices we all pay here in Chicago and throughout the United States."  Opp. 1.  Plaintiffs have alleged no fact supporting a claim that any Unilever entity caused antitrust injury in the United States.  Their Complaint describes only alleged anticompetitive activity by a German Unilever company — neither PLC nor NV — operating in Germany in a line of business that Unilever entities in the United States had exited well prior to the relevant period.  Among the Complaint's many fatal flaws, this is the most obvious and most damning.

## I.     DEFENDANTS' DECLARATIONS ARE NOT CONCLUSORY, ARE TYPICAL OF THOSE USED IN MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND SHOULD BE CONSIDERED BY THIS COURT

Plaintiffs argue that the declarations of Stephen Williams submitted in support of PLC's and NV's motions to dismiss (Docket Nos. 77 and 88) (collectively, the "Williams Declarations") are "self-serving" and "inadequate to rebut the allegations of the complaint," because they fail to "demonstrate the basis for the affiant's knowledge" and are "wholly conclusory."  Opp. 9.  Plaintiffs further argue that all of the statements in the Williams Declarations are inadmissible hearsay, "because how else could Mr. Williams opine as to how an 'independent' company on a separate continent conducts its business?"  *Id.*  Plaintiffs

misunderstand the law and the widely accepted practice of submitting declarations of corporate officers in support of motions to dismiss on jurisdictional grounds.

First, the Williams Declarations are not "hearsay," because Mr. Williams has personal knowledge of every statement he makes. He explains in his declarations that 1) he has been employed by PLC and NV since 1986; 2) he has held his current position of General Counsel and Chief Legal Officer of PLC and NV since 1993; 3) he is responsible for advising the PLC and NV boards and executive management teams on legal issues and for legal services; and 4) in this capacity, he has become familiar with the activities of PLC and NV and their subsidiaries and affiliates throughout the world. *See* Declaration of Stephen Williams in Support of Motion to Dismiss by Unilever PLC, dated May 12, 2008 ("PLC Williams Decl.") ¶ 1 (Docket # 77); Declaration of Stephen Williams in Support of Motion to Dismiss by Unilever NV, dated May 29, 2008 ("NV Williams Decl.") ¶ 1 (Docket # 88). The declarations contain no statement made by someone other than the declarant, and therefore are not hearsay. *See* Fed. R. Evid. 801(c).

Further, it is common practice in motions to dismiss for lack of personal jurisdiction for corporate officers to submit declarations describing corporate structure, and for courts to rely on those declarations in reaching their decisions. *See, e.g.*, *Arzoomanian v. British Telecomms., PLC*, Civil Action No. 03-374 (JLL), Opinion and Order, at 12 (D.N.J. Aug. 17, 2004) (attached to Memorandum in Support of Motion to Dismiss by Unilever PLC (Docket # 75), at Ex. A) (granting motion to dismiss for lack of personal jurisdiction where PLC submitted declaration by Stephen Williams regarding PLC's corporate relationship to Unilever United States, Inc.); *see also EsNtion Records, Inc. v. JonesTM, Inc.*, No. 3:07-CV-2027-L, 2008 WL 2415977, at *5 (N.D. Tex. June 16, 2008) (granting motion to dismiss for lack of personal

2

jurisdiction where plaintiff failed to rebut declarations from defendant's corporate secretary showing, *inter alia*, that corporate parent and subsidiary were separate and distinct entities); *Am. Copper & Brass, Inc. v. Mueller Europe, Ltd.*, 452 F. Supp. 2d 821, 830 (W.D. Tenn. 2006) (granting motion to dismiss for lack of personal jurisdiction over foreign parent, noting that "[u]nsupported allegations in the complaint, in the face of Defendant's detailed affidavits [from the defendant's managing director] challenging jurisdiction, are not sufficient factual allegations" to survive motion to dismiss) (internal quotation marks omitted).

In addition, the Williams Declarations are not "conclusory." They are replete with detailed facts concerning the Foreign Defendants' sources of income, their status as holding companies, and their lack of business activities in the United States. *See, e.g.*, PLC Williams Decl. ¶¶ 4-16 (Docket # 77); NV Williams Decl. ¶¶ 4-16 (Docket # 88). The declarations also state that Unilever United States, Inc. ("Unilever US") is a distinct and independently managed corporation that generates income, keeps financial records and books, pays taxes and maintains bank accounts separately from PLC and NV. *See* PLC Williams Decl. ¶ 17 (Docket # 77); NV Williams Decl. ¶ 17 (Docket # 88).

Plaintiffs cite several cases in support of the proposition that "federal courts do not give any weight to wholly conclusory assertions in affidavits" (Opp. 10) — an unobjectionable point. However, Plaintiffs cite no authority that suggests the Williams Declarations are insufficient. Whether an affidavit was deficient because it contained conclusory statements was not at issue in *Purdue Research Foundation v. Sanofi-Synthelabo., S.A.*, 338 F.3d 773 (7th Cir. 2003) (Opp. 10) (discussion focusing on determination that district court did not automatically have personal jurisdiction over an assignee, even though it may have had jurisdiction over the assignor). Indeed, in that case, the Seventh Circuit affirmed the district

court's holding that it lacked personal jurisdiction over a foreign corporate parent, noting that "as a general rule, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Id.* at 788 n.17.  In *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002) (Opp. 10), the court found that it had personal jurisdiction over a foreign parent company and foreign affiliates, because two U.S. subsidiaries were "mere instrumentalities." *Id.* at 1273.  However, plaintiffs there demonstrated, *inter alia*, that the U.S. subsidiaries did not undertake any business activity for anyone other than the foreign defendants and that the foreign defendants themselves maintained bank accounts, kept employees and conducted business activities in the United States.  *Id.* at 1273-74.[1]

        The Williams Declarations set forth detailed facts showing no such business activity or corporate presence in the United States by PLC or NV.  *See, e.g.*, PLC Williams Decl. ¶¶ 4-16 (Docket # 77); NV Williams Decl. ¶¶ 4-16 (Docket # 88).  Those facts demonstrate that this Court lacks personal jurisdiction over PLC and NV, and Plaintiffs have failed to make a *prima facie* showing to the contrary.  *See Purdue Research Found.*, 338 F.3d at 782-83 ("once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

---

[1] Plaintiffs also cite *Whitney Information Network, Inc. v. Xcentric Venture, LLC*, 199 Fed. Appx. 738 (11th Cir. 2006) and *Arnold v. Morton International, Inc.*, No. IP97-1279-C-T/G, 2000 WL 1007176 (S.D. Ind. July 19, 2000) in their discussion about how courts should not give weight to conclusory statements in declarations relating to personal jurisdiction.  Opp. 10.  However, *Whitney Information Network, Inc.* did not address whether a declaration was sufficiently fact-specific to demonstrate lack of corporate presence for purposes of jurisdictional analysis, but rather focused on whether a declaration had shown that defendants were entitled to immunity under the Communications Decency Act so as to fall outside of Florida's long-arm statute.  199 Fed. Appx. at 742-43.  *Arnold* did not address personal jurisdiction at all; rather, the case discussed affidavits offered in opposition to a motion for summary judgment under Fed. R. Civ. P. 56(e).

## II. THE COURT LACKS PERSONAL JURISDICTION OVER UNILEVER PLC AND UNILEVER NV

### A. The Complaint Alleges No Intentional Violation of the Sherman Act by Unilever PLC and Unilever NV

Plaintiffs say that the Court has personal jurisdiction over the Foreign Defendants, because the Complaint alleges PLC and NV "committed an intentional violation of the antitrust laws in this country." Opp. 10. The Complaint alleges absolutely no fact in support of this vague and conclusory allegation, however. Instead, the Complaint refers to a decision issued by Germany's Federal Cartel Office ("FCO") evaluating alleged anticompetitive activity by the German Unilever company Deutschland GmbH ("GmbH") relating "exclusively to Germany." *See* Declaration of Ronald S. Rolfe, dated March 21, 2008 (Docket #39) ("Rolfe Decl.") Ex. 1, at 20.[2] In addition, the FCO decision pertains to anticompetitive activity by GmbH with respect to prices of toothpaste — a product line Unilever entities in the United States exited nearly two years before the alleged scheme was initiated. *Compare* Rolfe Decl. Ex. 1, at 8 (Docket # 39) (alleging June 2005 talks on toothpaste prices) *with* Rolfe Decl. Ex. 2, at 18 (Docket # 39) (noting October 2003 sale of North American oral care brands). Plaintiffs have failed to explain how GmbH's alleged conduct "exclusively in Germany," involving products not sold in North America, could have caused harm in the United States by reason of an intentional violation of U.S. antitrust laws, thus providing a basis for personal jurisdiction over the Foreign Defendants.

Further, the cases Plaintiffs cite on this point are entirely inapposite. *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993) (Opp. 10-11) deals with subject matter

---

[2] Page citations to the Order and Notice of Regulatory Fine refer to the numbers appearing at the tops of the pages of the document and its translation.

jurisdiction — not personal jurisdiction, which was uncontested in that case.[3]  In *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.* (Opp. 11), the court found that it had specific personal jurisdiction over out-of-state defendants in a case involving claims of tortious interference, unjust enrichment and fraud where plaintiffs' complaint set forth detailed facts regarding the defendants' scheme to enter into a fraudulent agreement with plaintiffs and the specific economic injury in Illinois caused through that fraud.  262 F. Supp. 2d 898, 910-11 (N.D. Ill. 2003).  And in *Honeywell, Inc. v. Metz Apparatewerke*, the Circuit found that the district court had personal jurisdiction over a defendant that was alleged to have manufactured and sold flash devices in the United States in violation of plaintiff's patent.  509 F.2d 1137, 1144 (7th Cir. 1975) (defendant "may have not physically entered the state of Illinois, but it placed its flash devices in the stream of commerce under such circumstances that it should reasonably have anticipated that injury through infringement would occur there," and thus the court had personal jurisdiction).

Plaintiffs here offer no comparably fact-specific allegation to explain how alleged conduct by GmbH in Germany could have violated antitrust laws and caused injury in the United States.  Instead, Plaintiffs continue to base their argument on the same familiar paragraph in their Complaint: "This Court has *in personam* jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused injury to persons and entities residing in, located in, or doing business in the Northern District of

---

[3] The Foreign Defendants, along with Unilever US, also maintain that the Court lacks subject matter jurisdiction over Plaintiffs' claims.  *See* Memorandum in Support of Motion to Dismiss by Unilever United States, Inc., dated March 24, 2008 (Docket # 38) ("US Mem.") 12; Reply Memorandum in Support of Motion to Dismiss by Unilever United States, Inc., dated May 1, 2008 (Docket # 61) ("US Rep.") 10-13; Memorandum in Support of Motion to Dismiss by Unilever PLC, dated May 13, 2008 (Docket # 75) ("PLC Mem.") 9; Memorandum in Support of Motion to Dismiss by Unilever NV, dated May 30, 2008 (Docket # 87) ("NV Mem.") 7-8.

Illinois and throughout the United States." Cpl. ¶ 4. To find that such a transparently conclusory statement is sufficient to confer personal jurisdiction would be to render the constraints on personal jurisdiction set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) completely meaningless. *See also Am. Copper & Brass, Inc.*, 452 F. Supp. 2d at 831 ("The cases are unanimous that a bare allegation of conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough. Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums.") (citation omitted).

### B.  Unilever PLC and Unilever NV Do Not Conduct Business in the United States

After setting forth a sprawling laundry list of quotations on pages 2 through 8 of their Opposition drawn from a Unilever annual report, the company website and from a Unilever teleconference with securities analysts, Plaintiffs claim that "Unilever's programmes and initiatives in every region of the world are executed from the top down" and that "the management of NV and PLC actively plans and executes the Group's initiatives, new launches, innovations, packaging, prices, margins, etc." Opp. 8. Plaintiffs' ultimate argument here seems to be that, because these excerpts describe various Unilever companies as a "single economic entity" and sometimes use the pronoun "we," and because certain Unilever subsidiaries do business in the United States, the Foreign Defendants likewise do business in the United States, and thus the Court has personal jurisdiction over them. Plaintiffs are wrong.[4]

---

[4] Plaintiffs begin the section of their brief dedicated to this argument, "Many of the Unilever United States' brands, including many of the brands at issue here, are sold throughout the world by other Unilever entities." Opp. 12. This assertion, in addition to being irrelevant to Plaintiffs' point here, is incorrect. As explained above, the only Unilever product implicated in the FCO decision and thus "at issue here" is toothpaste, a product not sold by any Unilever entity in North America during the relevant period. That Unilever US sells other brands that are sold overseas is completely meaningless.

7

"We" in these quotations refers collectively to Unilever and its operations, as one would expect in an annual report or a report to investors in the parent holding company, and describes what the organization as a whole is doing with regard to business strategies. Plaintiffs provide no evidence that these broad initiatives are being conducted in such a way as to transform Unilever US (or other affiliates) into an alter ego of the Foreign Defendants in a manner sufficient to create general personal jurisdiction over them. On the contrary, the Williams Declarations make clear that "Unilever US is a distinct and independently managed corporation" separate from the Foreign Defendants. *See* PLC Williams Decl. ¶ 17 (Docket # 77); NV Williams Decl. ¶ 17 (Docket # 88). Plaintiffs fail to rebut these declarations. Moreover, the court in *Arzoomanian* specifically rejected the argument that it had personal jurisdiction over Unilever PLC, because Unilever was described as a "single, multinational entity." *See* Opinion and Order at 12-20 (attached to Memorandum in Support of Motion to Dismiss by Unilever PLC (Docket # 75), at Ex. A) (finding no agency or alter ego relationship that would subject Unilever PLC to the court's jurisdiction). The court noted that Unilever PLC was not involved in the day-to-day management of the U.S. subsidiary at issue and explained, "There is no reason to suspect that this corporate structure was created for an illegitimate business purpose. The fact that these entities may have a common website or profess similar overall statements of corporate policy does not change this calculation, nor does the fact that they submit a consolidated annual report." *Id.* at 18. Plaintiffs entirely ignore this case in their Opposition.

Other courts have likewise held that they did not have personal jurisdiction over parent corporations on the basis of references to the company as a collective entity on websites, in public statements or in consolidated financial disclosures. In *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 403 (S.D.N.Y. 2002), plaintiffs argued that the court had personal

8

jurisdiction over Siemens Austria, because it was a "mere department" of its parent, Siemens Germany, over whom the court already had determined it had jurisdiction. Plaintiffs in that case cited a "unified presentation" of the parent and subsidiary on the company website and argued that "the two companies hold themselves out to the world as a single entity," noting that "Siemens Germany has stated that 'cross-group and cross-regional cooperation' between the companies within the Siemens Group is 'crucial for the success of [Siemens's] Global Network of Innovation.'" *Id.* at 411. The court rejected this argument, explaining that such statements "intended to be read by the consuming public, cannot create a single entity structure given the sophistication and complexity of today's corporate world." *Id.* The court noted that "it is perfectly appropriate for a parent corporation to urge companies it owns to achieve its strategic and financial goals: that is, in fact, the purpose behind owning portfolio companies." *Id.*; *see also Reers v. Deutsche Banh AG*, 320 F. Supp. 2d 140, 157-58 (S.D.N.Y. 2004) ("the fact that subsidiaries share a logo [with parent], or that the parent decides to present several corporations on a website in a unified fashion, is insufficient to show lack of formal separation between two entities" in jurisdictional analysis); *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) (explaining that an "advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities" and that "because consolidated financial reporting is typical in a parent-subsidiary relationship, a mere department relationship cannot be established solely on the basis of such reporting") (internal quotation marks omitted).

Indeed, many of Plaintiffs' quotations in their Opposition have nothing to do with the relationship between the Foreign Defendants and Unilever US. *See, e.g.*, Opp. 3 ("Corporate

9

governance in Unilever has undergone radical change in the period since 2004"; "In 2006 the French competition authorities commenced an inquiry into potential competition law infringements in France involving a number of consumer goods companies in the home and personal care sector, including Unilever France and Lever Faberge France, both subsidiaries of Unilever Group"). Some address only the relationship between PLC and NV — that they have common directors and an operating agreement (the "Deed of Mutual Covenants") between them, and calculate earnings on a combined basis. *See* Opp. 5. Still others discuss the global performance of Unilever without reference to specific subsidiary or parent entities. *See* Opp. 4 ("we faced significant increases in the cost of various commodities"). Further, the fact that certain centralized services — "Finance, HR, IT, Communications and Legal" — are provided to the "whole business" (Opp. 3) proves nothing. As Unilever's annual report explains, three regional operating entities in Europe, the Americas and East Africa "are responsible for managing Unilever's business and local operations in their regions." 2007 Unilever Annual Report and Accounts, Ex. 1 to Opposition, at 7. Providing a central source for these services, rather than recreating them within each operating unit, avoids wasteful redundancy. Nevertheless, the regional operating entities — not PLC or NV — "are primarily responsible for building relationships with customers, managing supply chain networks, and deploying brands and innovations effectively, focused on excellent execution in the marketplace." *Id.*; *see also* 2006 Unilever Annual Report and Accounts, Ex. 6 to Opposition, at 5 (regional operating units "are fully accountable for the profit performance of our business, as well as growth, short-term cash flows and the in-year development of market shares").

Ultimately, Plaintiffs fail to explain how any of their quotations is germane to the question of whether the Court has personal jurisdiction over PLC and NV. Plaintiffs do cite

10

*Chrysler Corp. v. General Motors Corp.*, 589 F. Supp. 1182 (D.D.C. 1984) (Opp. 12) and *In re Vitamins Antitrust Litigation*, 270 F. Supp. 2d 15 (D.D.C. 2003) (Opp. 12) and quote the general factors those courts considered in deciding whether they had personal jurisdiction over a parent based on its relationship with a subsidiary, but Plaintiffs never apply those factors to the circumstances of this case. Actual consideration of those factors confirms that this Court does not have personal jurisdiction over the Foreign Defendants here. In *Chrysler Corp.*, in determining it had personal jurisdiction over the defendant parent, the court took into account substantial overlap between the parent and subsidiary boards and the significant control the parent exerted over the subsidiary's day-to-day operations. 589 F. Supp. at 1201 (also citing, *inter alia*, whether separate books and bank accounts are kept as relevant to determining whether personal jurisdiction existed over a parent corporation through its subsidiary); *see also In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d at 22-27 (noting "significant overlap" between parent's and subsidiaries' boards "such that they were not independent entities" in finding court had personal jurisdiction over corporate parent).

Here, Unilever US is a distinct and independently managed corporation that generates income, keeps financial records and books, pays taxes and maintains bank accounts separately from PLC and NV. *See* PLC Williams Decl. ¶ 17 (Docket # 77); NV Williams Decl. ¶ 17 (Docket # 88). Unilever US's board is separate and autonomous. *Id.* PLC and NV do not involve themselves in the management of, or subsidize, Unilever US's day-to-day operations. *Id.* PLC and NV have not "purposefully established minimum contacts" with the United States such that personal jurisdiction would be "reasonable and fair under the circumstances." *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943-44 (7th Cir. 2000) ("due process requires that personal jurisdiction cannot be premised on

corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary").

### III.　PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

Plaintiffs have presented no evidence to rebut the Williams Declarations, and thus have failed to make the requisite *prima facie* showing of personal jurisdiction over the Foreign Defendants. *See Purdue Research Found.*, 338 F.3d at 782-83. Nevertheless, Plaintiffs request jurisdictional discovery (Opp. 13), while providing no explanation about what type of information they seek to discover or the scope and manner of the desired discovery. Their request should be denied. Plaintiffs' vague and conclusory allegations are insufficient to warrant jurisdictional discovery. The Second Circuit has explained, "We recognize that without discovery it may be extremely difficult . . . to make a *prima facie* showing of jurisdiction over a foreign corporation . . . . That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States — as it properly may do." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998).

If Plaintiffs' allegations and the excerpts they proffer were sufficient to entitle them to jurisdictional discovery over the Foreign Defendants, "it would not be difficult for [any] plaintiff suing a multinational foreign corporation . . . to make similar conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue." *Id.* at 185; *see also EsNtion Records, Inc.*, 2008 WL 2415977, at *6 (refusing jurisdictional discovery where plaintiff failed to controvert statements set forth in defendant's declaration regarding personal jurisdiction or otherwise describe scope of desired discovery); *Arzoomanian*, Opinion and Order at 28 n.5 (attached to Memorandum in Support of Motion to Dismiss by Unilever PLC (Docket #

12

75), at Ex. A) (refusing jurisdictional discovery regarding PLC, noting "[p]laintiff has not provided any reason why it was unable to procure the information it needs, nor explained what information it wishes to discover, or how it would conduct such discovery"); *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d at 412-13 (same). Plaintiffs simply have not made the showing required before a foreign corporation can be subjected to burdensome and intrusive discovery.[5]

---

[5] The briefs in support of PLC's and NV's motions to dismiss both incorporated by reference the substantive arguments set forth in Unilever US's memoranda in support of its motion to dismiss. *See* PLC Mem. 8-9 (Docket # 75); NV Mem. 7-8 (Docket # 87). Plaintiffs do not respond to any of these arguments with respect to PLC or NV, and thereby concede those points. *See, e.g.*, *Dick v. Carpenter*, No. 02 C 3038, 2003 WL 1563732, at *2 (N.D. Ill. Mar. 17, 2003) (holding that where plaintiff did not respond to defendant's arguments on motion to dismiss that court lacked subject matter jurisdiction, "they are taken as conceded"). Therefore, the Court also should grant the PLC's and NV's motions to dismiss on these grounds.

## **Conclusion**

For the foregoing reasons, the Court should grant the motions of Unilever PLC and Unilever NV to dismiss all claims in the Complaint.

July 14, 2008                                                                 Respectfully submitted,

By:       /s/ Britt M. Miller

Ronald S. Rolfe
Elizabeth L. Grayer
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000
(212) 474-3700 – fax

Sheila Finnegan
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – fax

*Attorneys for Unilever PLC and Unilever NV*

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on July 14, 2008, I caused a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS BY UNILEVER PLC AND UNILEVER NV**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                /s/ Britt M. Miller
                                          Britt M. Miller
                                          MAYER BROWN LLP
                                          71 South Wacker Drive
                                          Chicago, IL  60606
                                          Phone:  (312) 782-0600
                                          Fax:  (312) 701-7711
                                          E-mail:  bmiller@mayerbrown.com